COFFEY, Circuit Judge.
 

 The debtor-appellant, Madison Hotel Associates (“MHA”), appeals the ruling of Judge Crabb of the United States District Court for the Western District of Wisconsin that MHA’s Chapter 11 Plan of Reorganization impairs the claim of Prudential Insurance Company of America (“Prudential”).
 
 [1]
 
 We reverse and remand this case to the district court with instructions to reinstate the July 14, 1982 order of Judge Martin of the Bankruptcy Court for the Western District of Wisconsin, confirming MHA’s Chapter 11 Plan of Reorganization.
 

 I
 

 According to the undisputed facts, MHA is a limited partnership organized under the laws of Wisconsin and consisting of two general partners, Darrell Wild and Wild, Inc., in addition to a number of limited partners. MHA owns and operates the Concourse Hotel in Madison, Wisconsin.
 
 *413
 
 On December 11,1972, MHA entered into a loan agreement with the Citizens Mortgage Investment Trust (“CMIT”) to.finance the construction and operation of the Concourse Hotel. Pursuant to the terms of that agreement, CMIT advanced funds to MHA for construction of the hotel. In return, CMIT received a promissory note obligating MHA to repay the principal amount of the loan and interest accrued thereon. CMIT secured its loan with a first mortgage and a first security interest in MHA’s realty, and, in the event of default, an “assignment of rentals” accruing from such property. The parties agreed that CMIT would finance only the construction costs and upon completion of the hotel, the promissory note, along with all of CMIT’s security interests, would be assigned to Prudential who would, in turn, pay the outstanding balance of the CMIT loan and provide MHA with permanent financing for hotel operations. On September 9, 1974, CMIT assigned to Prudential the promissory note, in the amount of $7,000,000, the first mortgage and the first security interest in MHA’s realty, and the “assignment of rentals.” Thereafter, under the terms of the Prudential financing agreement, MHA was obligated to pay Prudential monthly installments of principal and interest in the amount of $59,360.
 
 [2]
 

 Shortly after opening in the summer of 1974, the Concourse Hotel began to experience operating problems and to generate a negative cash flow. As a result, early in 1976 MHA began defaulting on the payment of its monthly loan installments to Prudential. On October 16, 1978, Prudential issued a notice of default and acceleration of the amount due. Both the promissory note and the first mortgage provided that in the event of default, the mortgagee (Prudential) could immediately accelerate the entire balance due and payable, including principal, accrued and unpaid interest, and reasonable attorney’s fees. Some three-and-one-half months later, on February 1, 1979, Prudential commenced a foreclosure action in the United States District Court for the Western District of Wisconsin, seeking collection, under Wisconsin law, of the entire accelerated amount due from MHA.
 

 In the meantime, the record reveals that in May 1976, the general partners of MHA, Darrell Wild and Wild, Inc., had filed a lawsuit in Wisconsin state court alleging that the interest rates charged by Prudential (9V8 per annum) were usurious in violation of Wis.Stat. § 138.05.
 
 [3]
 
 On July 20, 1978, the Circuit Court for Dane County, Wisconsin, granted summary judgment for Prudential ruling that there existed no issues of material fact and that, as a matter of law, the interest rates did not violate Wis.Stat. § 138.05. On February 26, 1980, the Wisconsin Court of Appeals affirmed that judgment, reasoning that the corporate exception to the usury laws applied to the MHA limited partnership.
 
 Wild, Inc. v. Citizens Mortgage Inv. Trust,
 
 95 Wis.2d 430, 431-32, 290 N.W.2d 567, 568-69 (Wis.Ct.App.1980). The Federal district court reserved final disposition of Prudential’s
 
 *414
 
 foreclosure action until the Wisconsin state courts had resolved the usury issue. However, the record reveals that on February 11, 1980, some two weeks before the Wisconsin Court of Appeals issued its decision, the district court approved a stipulation between MHA and Prudential. Pursuant to the terms of that stipulation, the parties established an escrow account into which MHA paid the amount of principal and interest due Prudential under the promissory note and first mortgage.
 
 [4]
 
 It is undisputed that MHA has continued to make regular monthly payments into this escrow account, and as of August 1, 1983, MHA had paid some $4,888,581.17 into the account.
 

 On August 17, 1981, Judge Crabb of the Federal district court considered the parties’ legal and equitable arguments on the foreclosure issue, reviewed the applicable Wisconsin state law of foreclosure,
 
 see
 
 Wis.Stat. § 846.01
 
 et seq.
 
 (1981-82), and granted Prudential’s summary judgment motion to foreclose on the MHA mortgage. According to the court, “[o]n the present record the equities are with [Prudential] who [has] been subjected to years of protracted litigation pursued by [MHA] ... in an obvious effort to extend [its] low cost use of the loan funds .The court ruled that “because of the continuous and current default in the First Note, First Mortgage, and Security Agreement, [Prudential] may foreclose the First Mortgage by judicial proceeding under the terms of the mortgage and sell the collateral of the Security Agreement.” Moreover, the court ordered that Prudential “may have until August 24, 1981, in which to submit a form of judgment of foreclosure and sale of the realty described in the First Mortgage and the collateral described in the Security Agreement, to be entered by the court.” On August 24, 1981, before Prudential filed its judgment of foreclosure with the district court, MHA filed a Chapter 11 petition for reorganization in the United States Bankruptcy Court for the Western District of Wisconsin. The effect of MHA’s Chapter 11 petition was to stay the foreclosure proceeding,
 
 see
 
 11 U.S.C. § 362(a) (1982), transfer it to the bankruptcy court,
 
 see
 
 28 U.S.C. § 1478 (1982), and thereby preclude Prudential from obtaining a final judgment of foreclosure.
 

 Some four months later, on December 22, 1981, MHA filed its proposed plan of reorganization with the bankruptcy court. On that same day, the bankruptcy court conducted a hearing to address claims by CMIT and Prudential that the court should abstain from considering MHA’s Chapter 11 petition for reorganization,
 
 see
 
 11 U.S.C. § 305(a)(1) (1982),
 
 [5]
 
 or, in the alternative, dismiss the entire case,
 
 see
 
 11 U.S.C. § 1112(b) (1982).
 
 [6]
 
 Following the evidentia-
 
 *415
 
 ry hearing, the court ruled that “[t]his case is not appropriate for abstention. There are claims which exist which are not and nor can be better protected in another court. I’m satisfied with the debtor as a person which may have relief under Chapter 11.” The bankruptcy court added that under 11 U.S.C. § 1112(b), “there are various categories suggested as a basis for dismissal. None of those specific suggested categories fits the case nor has it been contended that it does.” Nonetheless, CMIT and Prudential argued that “there is available an additional category which would be an absence of good faith.” The bankruptcy court judge responded, “Pm satisfied that
 
 there has been sufficient efforts to reorganize undertaken by the debtor to rebut any contention that there would be a lack of good faith in the initial filing of the Chapter 11.
 
 As I indicated before, the debtor is an appropriate entity for relief under Chapter 11.” (Emphasis added).
 

 Throughout the pendency of the Chapter 11 reorganization proceeding, the stay remained in effect upon Prudential’s foreclosure action in the district court. Prudential continued to seek relief from the stay in order that it could obtain a judgment of foreclosure on MHA’s realty. Prudential claimed that it “would be delayed in the event the chapter 11 case were dismissed if it was not permitted during the chapter 11 proceeding to enter its foreclosure judgment against Madison Hotel Associates and commence the period for equity of redemption allowed by Wisconsin law.”
 
 In re Madison Hotel Associates,
 
 18 B.R. 218, 219 (Bankr.W.D.Wis.1982). On March 5, 1982, the bankruptcy court ruled that Prudential lacked the “cause” required under 11 U.S.C. § 362(d)(1) to obtain relief from the stay. According to the court, “the occurrence of delay is speculative upon the failure of the debtor’s effort to reorganize under chapter 11. If those efforts are successful, Prudential will incur neither delay nor economic loss. Even if those efforts are unsuccessful, there is no contention that Prudential will incur unprotected or uncompensated economic injury.”
 
 Id.
 
 at 219.
 
 See also In re Madison Hotel Associates,
 
 31 B.R. 400, 401-02 (Bankr.W.D.Wis.1983).
 

 The bankruptcy court conducted additional hearings on MHA’s- proposed plan of reorganization on June 23, July 9, and July 12, 1982. At the July 9 hearing, Prudential presented an offer of proof that MHA had not acted in good faith when proposing its Chapter 11 Plan of Reorganization. The bankruptcy court noted that:
 

 “Taking all of the offers of proof as proved they must be applied against the legal standard for good faith in a Chapter 11. Also considered are matters which the Court has observed or has received evidence on either in this or in prior hearings which would be counter to the matters that are proved. Among those that I am prepared to consider are the terms of the plan that is now being considered for confirmation, the history of the amendments to that plan and the conduct of the debtor and debtor’s counsel throughout these Bankruptcy proceedings; the fact that the plan calls for full payment to all creditors and specifically the treatment of MHA, Inc. in the plan is considered. Also considered is the presence of an escrow fund that was created in prior proceedings.”
 

 The bankruptcy court added that “essentially a reorganization plan is proposed in good faith when there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.” Based upon these considerations, the court ruled that sufficient evidence existed to find that
 
 *416
 
 MHA’s plan of reorganization was proposed in good faith.
 

 The record reveals that all of MHA’s creditors, except Prudential, affirmatively accepted the plan of reorganization. Following the July 12 hearing, the bankruptcy court ruled, from the bench, that MHA’s plan satisfied the statutory requirements of 11 U.S.C. § 1129(a) and thus the court confirmed the plan.
 
 [7]
 
 Specifically, the bankruptcy court found that, in compliance with 11 U.S.C. § 1129(a)(3), MHA proposed the plan in good faith. According to the court:
 

 “This issue was disposed of in the prior ruling on Prudential’s offer of proof to the contrary. That ruling concluded that
 
 *417
 
 on the basis of the whole record in this ease the good faith of the debtor in proposing this plan to the standards required under this subsection and articulated in the case of
 
 In re Nite Lite Inns,
 
 [17 B.R. 367, 370 (Bankr.S.D.Cal.1982), ... that standard was sufficiently evidenced .... ”
 

 The bankruptcy court further found that in accord with 11 U.S.C. § 1129(a)(8), all classes of creditors either affirmatively accepted MHA’s plan of reorganization or their claims were “not impaired” by the plan. In particular, the court found that Prudential was not impaired as that term is defined in 11 U.S.C. § 1124 because MHA’s plan of reorganization cures the default of Prudential’s accelerated loan, reinstates the maturity of such loan as it existed before the default, compensates Prudential for damages incurred as a result of reasonable reliance, and does not otherwise alter legal, equitable, or contractual rights between MHA and Prudential. On July 14, 1982, the bankruptcy court entered a written order confirming MHA’s plan of reorganization.
 

 Prudential appealed the bankruptcy court’s order to the United States District Court for the Western District of Wisconsin. The case was assigned to Judge Crabb, the same judge who some two years previous granted Prudential’s motion for summary judgment to foreclose, under Wisconsin state law, on MHA’s mortgage. MHA filed a motion pursuant to 28 U.S.C. § 455(a), asking Judge Crabb to disqualify herself due to her apparent lack of impartiality on the issue of foreclosure and her statement that the case involved “many years of delay and legal skirmishing” on the part of MHA. Judge Crabb denied the motion, summarily responding that “[i]t is inevitable that judges will come to some evaluation of the merits of portions of the case. It does not follow from this, however, that the judge will be unable to remain neutral about other aspects of the case.” Following this terse and unsupported treatment of the impartiality question, Judge Crabb overruled the bankruptcy court’s holding that Prudential was not impaired under MHA’s plan of reorganization. According to the district court:
 

 “MHA’s plan impairs Prudential’s claim because it does not restore Prudential’s judicially-recognized right to proceed with foreclosure of the real and personal property of the Concourse Hotel. And, because Prudential’s right to foreclosure does not arise merely from a contractual provision or applicable law but is created by court order and is not simply a right to accelerated payments which can be cured, Prudential’s claim does not fall within the exception created by § 1124(2). Therefore, Prudential cannot be
 
 deemed
 
 to have accepted MHA’s plan under 11 U.S.C. § 1126(f) and this matter must be remanded to the bankruptcy court for a determination of the plan’s validity under 11 U.S.C. § 1129(b).”
 

 In re Madison Hotel Associates,
 
 29 B.R. 1003, 1009 (W.D.Wis.1983) (emphasis original) (footnote omitted). The district court further stated that “there are indications that MHA’s filing for reorganization may have been motivated by the sole purpose of hindering and delaying its creditors.”
 
 Id.
 
 at 1010. The court thus reasoned that:
 

 “The indications of misuse of the bankruptcy court are sufficient to require an evidentiary hearing by the bankruptcy court to determine whether MHA’s pre-filing conduct demonstrates by a preponderance of the credible evidence that its sole purpose in filing for Chapter 11 reorganization was to hinder or delay its secured creditors, Prudential and CMIT. The determination should not be limited to deciding only whether there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.”
 

 Id.
 
 On appeal, MHA claims that the district court erred in ruling that Prudential’s claim is impaired for purposes of 11 U.S.C. § 1129(a)(8). MHA further contends that the district court improperly construed the good faith requirement of 11 U.S.C. § 1129(a)(3).
 

 
 *418
 
 II
 

 We initially address the legal issue of whether Prudential’s claim against MHA is impaired for purposes of 11 U.S.C. § 1129(a)(8), which provides in pertinent part:
 

 “The court shall confirm a plan only if
 
 all
 
 of the following requirements are met:
 

 * * * * -k *
 

 (8) with respect to each class—
 

 (A) such class has accepted the plan; or
 

 (B) such class is not impaired under the plan.”
 

 (Emphasis added).
 
 [8]
 
 The parties agree that Prudential, as holder of the first mortgage on MHA’s realty, is the sole member of its class. Furthermore, it is clear that Prudential has not affirmatively accepted MHA’s plan of reorganization. Thus, in order for MHA’s Chapter 11 plan to satisfy the requirement of confirmation set forth in 11 U.S.C. § 1129(a)(8), Prudential’s claim must be one that is “not impaired” under the plan.
 

 The term “impaired” is defined in 11 U.S.C. § 1124 (1982).
 

 “Except as provided in section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan—
 

 (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest;
 

 (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—
 

 (A) cures any such default, other than a default of a kind specified in section 365(b)(2) of this title, that oe-curred before or after the commencement of the case under this title;
 

 (B) reinstates the maturity of such claim or interest as such maturity existed before such default;
 

 (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and
 

 (D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest; or
 

 (3)provides that, on the effective date of the plan, the holder of such claim or interest receives, on account of such claim or interest, cash equal to—
 

 (A) with respect to a claim, the allowed amount of such claim; or
 

 (B) with respect to an interest, if applicable, the greater of—
 

 (i) any fixed liquidation preference to which the terms of any security representing such interest entitle the holder of such interest; and
 

 (ii) any fixed price at which the debt- or, under the terms of such security, may redeem such security from such holder.”
 

 Congress “define[s] impairment in the broadest possible terms” and then carves out three narrow exceptions to that expansive definition.
 
 In re Taddeo,
 
 685 F.2d 24, 28 (2d Cir.1982).
 
 See also In re Forest Hills Associates,
 
 40 B.R. 410, 414 (Bankr.S.D.N.Y.1984). These three exceptions, though narrow in scope, are of vital importance in a Chapter 11 reorganization because, pursuant to 11 U.S.C. § 1126(f) (1982), “a class that is not impaired under a plan is
 
 deemed
 
 to have accepted the plan _” (Emphasis added). In the present case, MHA began to default on its loan payments in early 1976, Prudential accelerated the maturity of the loan in October of 1978, and Prudential obtained a judicial or
 
 *419
 
 der of foreclosure in August of 1981. Before Prudential reduced that order to a judgment of foreclosure, MHA filed a Chapter 11 petition for reorganization. MHA’s plan of reorganization seeks to cure the default of Prudential’s accelerated loan and reinstate the maturity of that loan as it existed before the default.
 
 [9]
 
 Thus, the issue before this court is whether MHA’s plan to cure the accelerated Prudential loan satisfies the four-prong test set forth in 11 U.S.C. § 1124(2); if so, Prudential’s claim is not impaired for purposes of 11 U.S.C. § 1129(a)(8) and Prudential is deemed to have accepted the plan.
 

 According to the bankruptcy court, MHA’s plan of reorganization did, in fact, satisfy the four-prong test of 11 U.S.C. § 1124(2). The bankruptcy court initially found that MHA’s plan cures the default, providing “for full payment to Prudential of the claim it has filed based on default .... ” The court next found that even though the district court had entered an order of foreclosure, MHA’s plan reinstates the maturity of Prudential’s accelerated loan as such maturity existed before the default. In support of this position the bankruptcy court relied upon language in
 
 In re Hewitt,
 
 16 B.R. 978 (Bankr.D.Alaska 1982), that a secured creditor is not “harmed by the reversal of acceleration, ... where a ... court has simply applied the contractual provision or applicable law requiring acceleration and has embodied this application in a judgment of foreclosure.” 16 B.R. at 977. The court next found that the plan properly “provides for payment of allowed costs and fees incurred [by Prudential] in enforcing the default.” Finally, the bankruptcy court found that none of Prudential’s alleged alterations in rights, neither “individually, nor all of them taken as a group, are sufficient to demonstrate that Prudential would be impaired by the confirmation of the plan.”
 

 The district court disagreed with the bankruptcy court’s analysis of section 1124(2). According to the district court, “MHA’s plan impairs Prudential’s claim because it does not restore Prudential’s judicially-recognized right to proceed with foreclosure of the real and personal property of the Concourse Hotel.”
 
 In re Madison Hotel Associates,
 
 29 B.R. at 1009. Contrary to the language of
 
 In re Hewitt,
 
 the district court reasoned that “[a] judicially-recognized right to foreclosure is something different from a right to accelerated payments that arises by operation of a contractual provision or of applicable law.”
 
 In re Madison Hotel Associates,
 
 29 B.R. at 1008. Thus, the district court concluded that “because Prudential’s right to foreclosure does not arise merely from a contractual provision or applicable law but is created by court order and is not simply a right to accelerated payments which can be cured, Prudential’s claim does not fall within the exception created by § 1124(2).”
 
 Id.
 
 at 1009.
 

 The question that arises is what effect the district court’s order of foreclosure, entered pursuant to Wisconsin state law, has upon MHA’s attempt to cure the default of its accelerated loan and thereby render Prudential’s claim “not impaired” under 11 U.S.C. § 1124(2). To resolve this question, we initially review the relevant statutory language and Congress’ intent in enacting the “impairment” exception set forth in section 1124(2). The general rule is that a claim is impaired unless it falls within one of the three exceptions set forth in 11 U.S.C. § 1124. In the present case, the applicable exception is found in section 1124(2) which provides that “curing a default, even though it inevitably changes a contractual acceleration clause, does not thereby ‘impair’ a creditor’s claim.”
 
 In re Taddeo,
 
 685 F.2d at 28-29. Indeed:
 

 “Section 1124(2) permits the plan to reverse a contractual or legal acceleration. In order for a class of claims or interests] to be unimpaired for purposes
 
 *420
 
 of section 1124(2), the plan must cure any default, other than an
 
 ipso facto
 
 default of a kind specified in section 365(b)(2), irrespective of whether such default occurred prior to or after commencement of the case. In addition, the plan must provide for the payment of compensation to the holder of the claim or interest for any damages incurred as a result of any reasonable reliance by such holder on the contractual provisions or applicable law which permitted acceleration. Provided that the plan does not otherwise alter the legal, equitable, or contractual rights to which the holder of the claim or interest is entitled,
 
 section 1124(2) permits the plan to reinstate the original maturity of the claim or interest as it existed before the default without impairing such claim or interest.
 
 ”
 

 5 L. King, Collier on Bankruptcy 111124.-03[2] at 1124-14 (15th ed. 1979) (emphasis added) (footnote omitted).
 
 See also In re Otero Mills, Inc.,
 
 8 Collier Bankr.Cas.2d 1340, 1342 (Bankr.D.N.M.1983). It is clear that section 1124(2) “provides the debtor in distress with the statutory tools necessary to effect a total healing of the scars of contractual default, by placing the parties into the same position they were in immediately before the default occurred.”
 
 In re Forest Hills Associates,
 
 40 B.R. at 415.
 

 Congress, when enacting section 1124(2), expressly provided that:
 

 “A claim or interest is unimpaired by curing the effect of a default and reinstating the original terms of an obligation when maturity was brought on or accelerated by the default. The intervention of bankruptcy and the defaults represent a temporary crisis which the plan of reorganization is intended to clear away.
 
 The holder of a claim or interest who under the plan is restored to his original position, when others receive less or get nothing at all, is fortunate indeed and has no cause to complain. Curing of the default and the assumption of the debt in accordance with its terms is an important reorganization technique for dealing with a particular class of claims, especially secured claims.”
 

 S.Rep. No. 989, 95th Cong., 2d Sess. 120,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad. News 5787, 5906 (emphasis added). There is no doubt that section 1124(2) embodies Congress’ intent to allow the Chapter 11 debtor to cure the default of an accelerated loan and reinstate the original terms of the loan agreement, without impairing the creditor’s claim. In sum, Congress:
 

 “quite appropriately concluded that a person that receives the benefits of its original bargain is not impaired even if the plan modifies such person’s rights by preventing such person from using a contractual or legal right of acceleration to terminate a valuable contract of the debt- or in circumstances where the debtor is willing to cure past defaults and perform under the original terms of the agreement.”
 

 5 L. King, Collier on Bankruptcy,
 
 supra,
 
 at 1124-14.
 
 See also In re Masnorth Corp.,
 
 28 B.R. 892, 894 (Bankr.N.D.Ga.1983). The rationale underlying Congress’ enactment of Chapter 11, including the “impairment” exception of section 1124(2), is the simple fact that reorganization is economically more efficient than liquidation. According to Congress:
 

 “Often, the return on assets that a business can produce is inadequate to compensate those who have invested in the business. Cash flow problems may develop, and require creditors of the business, both trade creditors and long-term lenders, to wait for payment of their claims. If the business can extend or reduce its debts, it often can be returned to a viable state. It is more economically efficient to reorganize than to liquidate, because it preserves jobs and assets.”
 

 H.R.Rep.No. 595, 95th Cong., 1st Sess. 220,
 
 reprinted in
 
 1978 U.S. Code Cong. & Ad. News 5963, 6179. Frequently, the interest rates on long-term loans are substantially less than the current market rate. Section 1124(2) promotes the economic efficiency of reorganization by allowing the Chapter 11
 
 *421
 
 debtor to reinstate the original terms of an accelerated long-term loan at this lower interest rate.
 
 See
 
 5 L. King, Collier on Bankruptcy,
 
 supra,
 
 at 1124-16.
 
 See also In re Jones,
 
 32 BR. 951, 955 (Bankr.D.Utah 1983) (“Section 1124(2) ... enables ... retention of advantageous contract terms.”).
 

 The legislative history of section 1124(2) reveals that a creditor who is prevented from exercising a contractual and/or legal right of acceleration, but who receives the complete benefit of its original bargain with the debtor, is “not impaired” for purposes of Chapter 11 analysis. Relying upon this policy consideration, various courts have reasoned that if a debtor cures the default of an accelerated loan in compliance with section 1124(2), the creditor who holds a judgment of foreclosure is not impaired, provided that the judgment does not merge into the mortgage under state law and no sale of foreclosure has occurred. In the leading case,
 
 In re Hewitt,
 
 the Alaska bankruptcy court was presented with the question of “whether § 1124(2) is applicable where a claim based on a contractual acceleration clause has been reduced to a judgment of foreclosure ... before the filing of the debtor’s Chapter 11 petition, but where foreclosure has not yet occurred.” 16 B.R. at 977. The court noted that under Alaska law, the mortgagor can terminate the judgment of foreclosure by paying the amount of the judgment before the actual foreclosure sale. In addition, Alaska law provides that following the foreclosure sale, the mortgagor has a one year period to redeem the property, and thus the property is not conveyed to the buyer until the one year redemption period expires. In light of this state law and Congress’ intent to relieve Chapter 11 debtors of the burdens of accelerated loans, the bankruptcy court reasoned that:
 

 “The secured creditor is no more harmed by the reversal of acceleration, and thus has as little cause to complain, where a ... court has simply applied the contractual provision or applicable law requiring acceleration and has embodied this application in a judgment of foreclosure. The Congressional policy to relieve Chapter 11 debtors of the burdens of acceleration clauses should not be thwarted by the formal obtaining of a judgment.”
 

 Id.
 
 at 977. Accordingly, the court held that, “[sjince application of the Congressional policy of § 1124(2) will not further add to the uncertainties of the state system, particularly where, as here, no foreclosure sale has been held, the policy should be given effect.”
 
 Id.
 
 at 979.
 

 Similarly, in
 
 In re Orlando Tennis World Development Co.,
 
 34 B.R. 558 (Bankr.M.D.Fla.1983), the debtor defaulted on a loan, the creditor accelerated payments, and the creditor then obtained a judgment of foreclosure, which was subsequently stayed upon the debtor’s filing of a Chapter 11 petition for reorganization. The debtor’s Chapter 11 plan of reorganization sought to cure the default of the accelerated loan. The Florida bankruptcy court confirmed the plan, reasoning that the debtor was not impaired for purposes of section 1124(2) because under Florida law, “the finality of the judgment of foreclosure is always subject to the exercise of the equity of redemption, and it is the foreclosure sale rather than the entry of judgment which cuts off the mortgagor’s rights.”
 
 Id.
 
 at 560. The court relied upon the language of
 
 In re Hewitt,
 
 and held that “[s]ince application of the Congressional policy of § 1124(2) will not further add to the uncertainties of the state system, particularly where, as here, no foreclosure sale has been held, the policy should be given effect.”
 
 In re Orlando Tennis World Development Co.,
 
 34 B.R. at 560.
 

 In
 
 In re Valente,
 
 34 B.R. 804 (Bankr.D.Conn.1982), the debtor defaulted on monthly payments, the creditor accelerated those payments and obtained a judgment of foreclosure. The debtor filed a Chapter 11 petition for reorganization, thereby staying the foreclosure proceedings. Soon thereafter the debtor filed a plan of reorganization, claiming that under 11 U.S.C. § 1124(2) the creditor was not impaired because the plan sought to cure the default. The bankruptcy court refused to confirm the plan, ruling that “once a foreclosure
 
 *422
 
 action has gone to judgment, the mortgage is merged into the judgment leaving the mortgagor with only the right to redeem by payment of the entire debt.”
 
 Id.
 
 at 807. The Connecticut district court reversed, reasoning that “a Connecticut judgment of foreclosure by sale is not sufficiently final so as to merge a mortgage irrevocably into itself.”
 
 Valente v. Savings Bank of Rockville,
 
 34 B.R. 362, 364 (D.Conn.1983). The district court remanded the case and directed that “if the Bankruptcy Court on remand finds that the debtors’ plan cures the default at issue, the bank’s claim may be deemed ‘not impaired’ under § 1124(2).”
 
 Id.
 
 at 368. The district court in
 
 Valente
 
 declined to follow Judge Crabb’s holding in
 
 In re Madison Hotel Associates,
 
 stating that, because the debtor’s authority to cure is “broad enough to reach claims reduced to state court judgment, this Court adheres to the
 
 Taddeo
 
 precedent and holds that, if a Bankruptcy Judge finds that a debtor’s plan cures a default, that cure renders a creditor's claim ‘not impaired’ under § 1124(2).”
 
 Valente v. Savings Bank of Rockville,
 
 34 B.R. at 368.
 
 See also In re Sapphire Investments,
 
 27 B.R. 56, 59 (Bankr.D.Ariz.1983) (“a promissory note and mortgage can be reinstated in a chapter 11 proceeding after the granting of the ... [foreclosure] judgment but prior to the sheriff’s sale and the running of the redemption period.”).
 

 The point to be gleaned from the relevant case law is that a creditor, holding a final judgment of foreclosure, is not impaired under section 1124(2) if the debtor’s plan of reorganization cures the default of the accelerated loan before the foreclosure sale actually occurs or before the judgment merges into the mortgage under state law, thereby transferring title to the mortgagee. In
 
 In re Clark,
 
 738 F.2d 869 (7th Cir.1984), this court held in an analogous Chapter 13 situation, where the bank had obtained a judgment of foreclosure on the debtor’s farm, that “the power to ‘cure’ a default provided by [11 U.S.C.] § 1322(b)(5) permits a debtor to de-accelerate the payments under a note secured by a residential property mortgage.” 738 F.2d at 874.
 
 See also Grubbs v. Houston First American Sav. Ass’n.,
 
 730 F.2d 236, 246 (5th Cir.1984) (en banc);
 
 In re Taddeo,
 
 685 F.2d at 29. We reasoned that the existence of a foreclosure judgment did not alter the result because “in Wisconsin a judgment of foreclosure does nothing but judicially confirm the acceleration.”
 
 In re Clark,
 
 738 F.2d at 874. In the present case, Prudential has simply obtained an
 
 order
 
 of foreclosure under Wisconsin law that has not been reduced to final judgment. It thus follows that as long as MHA complies with section 1124(2), curing the default of Prudential’s accelerated loan and reinstating the original terms of that loan, Prudential’s claim is not impaired.
 

 We add that even if Prudential had obtained a judgment of foreclosure, that would not alter our analysis because “[u]nder Wisconsin law, a mortgagee has only a lien on the mortgaged property
 
 even after a judgment of foreclosure is entered.
 
 ”
 
 Id.
 
 at 871 (emphasis added). Pursuant to Wisconsin state law, “[a] judgment of foreclosure ‘does little more than determine that the mortgagor is in default, the amount of principal and interest due and unpaid, the amount due to the plaintiff mortgagee for taxes, etc. ... The judgment does not destroy the lien of the mortgage but rather judicially determines the amount thereof.’ ”
 
 Id.
 
 (quoting
 
 Marshall & Ilsley Bank v. Greene,
 
 227 Wis. 155, 164, 278 N.W. 425, 429 (Wis.1938)).
 
 See also Glover v. Marine Bank of Beaver Dam,
 
 117 Wis.2d 684, 697, 345 N.W.2d 449, 455 (Wis.1984) (mortgagee acquires title to property only after judicial confirmation of the foreclosure sale);
 
 Bank of Commerce v. Waukesha County,
 
 89 Wis.2d 715, 723, 279 N.W.2d 237, 241 (Wis.1979) (Wisconsin follows lien theory of mortgages);
 
 In re Lynch,
 
 12 B.R. 533, 534-35 (Bankr.W.D.Wis.1981) (mortgagor loses interest in property only after foreclosure sale); Wis. Stat. § 846.17 (1981-82). Accordingly, Prudential’s failure to obtain a judgment of foreclosure on its accelerated loan is of no consequence in this case. Under Wisconsin law, the judgment would simply represent
 
 *423
 
 a judicial determination of the amount due under the accelerated loan and Prudential would continue to hold only a lien upon MHA’s property.
 

 In light of the applicable law of foreclosure in Wisconsin, this case is easily distinguishable from the cases relied upon by the district court judge, where state law provided that the judgment of foreclosure merged the mortgage and the judgment, effectively transferring title to the mortgagee. For example, in
 
 In re Monroe Park,
 
 18 B.R. 790 (Bankr.D.Del.1982), the Delaware bankruptcy court reasoned that “there is a judgment of foreclosure [and]
 
 [vender Delaware law the mortgage is merged in that judgment.”
 
 18 B.R. at 791 (emphasis added). The court thus concluded that under section 1124(2), “cure of default and reinstatement of maturity date of a mortgage are no longer possible after entry of a foreclosure judgment.”
 
 Id.
 
 Similarly, in
 
 In re Saint Peter’s School,
 
 16 B.R. 404 (Bankr.S.D.N.Y.1982), the New York bankruptcy court held that:
 

 “The debtor cannot now propose to cure previous defaults under the mortgage and reinstate its maturity for continued payments in accordance with its terms because the debtor’s rights under the mortgage were terminated pursuant to state law when the bank obtained a judgment of foreclosure prior to the filing of the Chapter 11 petition.”
 

 16 B.R. at 409. The court added that:
 

 “Had the bank not obtained a judgment of foreclosure, deceleration would be permitted under Code § 1124(2). However,
 
 the existence of the judgment of foreclosure into which the mortgage was merged, cannot simply be ignored.
 
 The foreclosure judgment provides the bank with - an additional right to immediate realizaiton of its legal, equitable and contractual interests.”
 

 Id.
 
 (emphasis added).
 
 [10]
 
 In contrast, even if Prudential had obtained a judgment of foreclosure, under Wisconsin law the judgment would not merge with the mortgage and transfer title to Prudential. Instead, under Wisconsin law, Prudential,' just as the creditors in
 
 In re Hewitt,
 
 16 B.R. at 977,
 
 In re Orlando Tennis World Development Co.,
 
 34 B.R. at 560, and
 
 Valente v. Savings Bank of Rockville,
 
 34 B.R. at 364, would continue to hold only the lien that it presently holds upon MHA’s property.
 
 [11]
 

 The intended purpose of 11 U.S.C. § 1124(2) is to permit a Chapter 11 debtor to cure the default of an accelerated loan, reinstate the maturity of that loan as it existed before default, and thereby “reverse a contractual or legal acceleration.” 5 L. King, Collier on Bankruptcy,
 
 supra,
 
 at 1124-14. MHA’s plan of reorganization clearly complies with Congressional intent. According to the bankruptcy court, MHA’s plan of reorganization will cure the default of Prudential’s accelerated loan, reinstate the maturity of Prudential’s accelerated loan as it existed previous to the default, compensate Prudential for damages incurred as a result of reasonable reliance on the acceleration, and not alter legal, equita
 
 *424
 
 ble, or contractual rights between MHA and Prudential. Prudential’s contention that the default is not cured under MHA’s plan because Prudential has an order of foreclosure that will not be reduced to final judgment, directly contravenes the purpose of 11 U.S.C. § 1124(2) to allow a Chapter 11 debtor to reverse a contractual or legal acceleration. Indeed, Congress provides that,
 
 “[(\he holder of a claim or interest who under the plan is restored to his original position, when others receive less or get nothing at all, is fortunate indeed and has. no cause to
 
 complain.” S.Rep. No. 989, 95th Cong., 2d Sess. 120,
 
 reprinted in
 
 1978 U.S. Code Cong. & Ad. News 5787, 5906 (emphasis added). Thus, in light of the fact that Prudential holds only a lien upon MHA’s property, and that MHA’s plan of reorganization satisfies the four-prong test of 11 U.S.C. § 1124(2), we hold that Prudential’s claim is “not impaired.”
 
 [12]
 
 Accordingly, Prudential, as the sole member of its class, is deemed to have accepted the plan for purposes of 11 U.S.C. § 1129(a)(8).
 

 MHA next contends that the district court improperly construed the good faith requirement of 11 U.S.C. § 1129(a)(3) which provides that:
 

 “The court shall confirm a plan only if
 
 all
 
 of the following requirements are met:
 

 (2) The plan has been proposed in good faith and not by any means forbidden by law.”
 

 (Emphasis added).
 
 [13]
 
 The district court reasoned that section 1129(a)(3) “requires the bankruptcy court to evaluate the debtor’s pre-filing conduct as well as the feasibility of the plan itself.”
 
 In re Madison Hotel Associates,
 
 29 B.R. at 1009. According to the court, “[i]n the assertions made by Prudential there are indications that MHA’s filing for reorganization may have been motivated by the sole purpose of hindering and delaying its creditors.”
 
 Id.
 
 at 1010. Thus, the district court concluded that “[t]he indications of misuse of the bankruptcy court are sufficient to require an evidentiary hearing by the bankruptcy court to determine whether MHA’s pre-fil-ing conduct demonstrates by a preponderance of the credible evidence that its sole purpose in filing for Chapter 11 reorganization was to hinder or delay its secured creditors .... ”
 
 Id.
 

 We initially note that the district court judge erroneously construed the good faith requirement of 11 U.S.C. § 1129(a)(3). Though the term “good faith,” as used in section 1129(a)(3), is not defined in the Bankruptcy Code,
 
 see
 
 5 L. King, Collier’s on Bankruptcy ¶ 1129.02[3][a] at 1129-14
 
 *425
 
 (15th ed. 1979), the term is generally interpreted to mean that there exists “a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.”
 
 In re Nite Lite Inns,
 
 17 B.R. 367, 370 (Bankr.S.D.Cal.1982).
 
 See also In re Coastal Cable T.V., Inc.,
 
 709 F.2d 762, 764 (1st Cir.1983);
 
 Matter of Nikron, Inc.,
 
 27 B.R. 773, 778 (Bankr.E.D.Mich.1983). Similarly, in the context of a Chapter 13 reorganization, this court has interpreted the identical “good faith” language contained in 11 U.S.C. § 1325(a)(3) to require the bankruptcy court to review the proposed plan for accuracy and “a fundamental fairness in dealing with one’s creditors.”
 
 In re Rimgale,
 
 669 F.2d 426, 432-33 (7th Cir.1982) (quoting
 
 In re Beaver,
 
 2 B.R. 337, 340 (Bankr.S.D.Cal.1980)).
 
 [14]
 
 Thus, for purposes of determining good faith under section 1129(a)(3), as well as section 1325(a)(3), the important point of inquiry is the plan itself and whether such plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code. The district court’s decision failed to make this legal distinction between the good faith that is required to
 
 confirm a plan
 
 under section 1129(a)(3) and the good faith that has been established as a
 
 prerequisite to filing
 
 a Chapter 11 petition for reorganization.
 
 See, e.g.,
 
 E. DiDanato,
 
 Good Faith Reorganization Petitions: The Back Door Lets the Stranger In,
 
 16 Conn.L.Rev. 1, 3 (1983).
 

 According to the good faith requirement of section 1129(a)(3), the court looks to the debtor’s plan and determines, in light of the particular facts and circumstances, whether the plan will fairly achieve a result consistent with the Bankruptcy Code. The plan “must be ‘viewed in light of the totality of the circumstances surrounding confection’ of the plan [and] ... [t]he bankruptcy judge is in the best position to assess the good faith of the parties’ proposals.”
 
 In re Jasik, 121
 
 F.2d 1379, 1383 (5th Cir.1984) (quoting
 
 Public Finance Corp. v. Freeman,
 
 712 F.2d 219, 221 (5th Cir.1983)). In the present case, the bankruptcy judge conducted three separate evidentiary hearings concerning the feasibility of MHA’s plan. At the July 9, 1982 hearing, Prudential presented an offer of proof that MHA had not acted in good faith in proposing the plan of reorganization. The bankruptcy court “reviewed with some care the offer of proof ... generally ... directed to the frustrations of a creditor which has pursued a variety of disputes for a long period of time.” The court accepted Prudential’s offer of proof as true and stated that “a reorganization plan is proposed in good faith when there is reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.” The court considered the “terms of the plan ..., the history of the amendments to that plan and the conduct of the debtor and debtor’s counsel throughout the Bankruptcy proceedings” and concluded that “[t]here is sufficient evidence that the purposes of the code are being met” through MHA’s plan of reorganization. Furthermore, at the July 12, 1982 hearing, when the bankruptcy judge confirmed MHA’s plan from the bench, he stated that
 
 “on the basis of the whole record in this case the good faith of the debtor in proposing this plan to the standards required under [11 U.S.C. § 1129(1)(3)] ... was sufficiently evidenced
 
 _” (Emphasis added). In reaching this conclusion, the bankruptcy judge properly noted that MHA’s “plan calls for full payment to all creditors .... ” Indeed, all creditors have affirmatively accepted MHA’s plan, except Prudential who is reinstated to its original position, and thus
 
 deemed
 
 to have accepted the plan. In light of the totality of the circumstances, including the fact that MHA’s plan will pay all creditors in full and thereby allow MHA to continue as a viable entity in accord with the purposes of Chapter 11, we agree with the bankruptcy court and hold that MHA’s
 
 *426
 
 plan of reorganization satisfies the “good faith” requirement of 11 U.S.C. § 1129(a)(3).
 

 We turn our attention briefly to the issue of whether the bankruptcy court need conduct an additional evidentiary hearing to determine if MHA originally filed its Chapter 11 petition for reorganization in good faith. It is generally recognized that “good faith” is a threshold prerequisite to securing Chapter 11 relief,
 
 see, In re BBT,
 
 11 B.R. 224, 235 (Bankr.D.Nev.1981);
 
 In re Victory Constr. Co.,
 
 9 B.R. 549, 558 (Bankr.C.D.Cal.1981), and that the lack of such good faith constitutes “cause,” sufficient for dismissal under 11 U.S.C. § 1112(b).
 
 In re Mildevco, Inc.,
 
 40 B.R. 191, 193 (Bankr.S.D.Fla.1984);
 
 In re Gregory,
 
 39 B.R. 405, 407 n. 1 (Bankr.M.D.Tenn.1984);
 
 In re Lotus Investments, Inc.,
 
 16 B.R. 592, 594-95 (Bankr.S.D.Fla.1981). The record reveals that on December 22, 1981, the bankruptcy court considered Prudential’s claim under 11 U.S.C. § 1112(b) that the court should dismiss the case for MHA’s lack of good faith in originally filing its Chapter 11 petition. Following a review of the evidence, including MHA’s usury action against Prudential in Wisconsin state court and MHA’s filing for Chapter 11 reorganization before the district court entered a final judgment of foreclosure, the bankruptcy court found that “there have been sufficient efforts to reorganize undertaken by the debtor
 
 to rebut any contention that there would be a lack of good faith in the initial filing of the Chapter 11.”
 
 (Emphasis added). In support of this position, the record reveals that since February 1980, MHA has continued to make monthly payments, equivalent to the amount owed under the Prudential financing agreement, into a court-approved escrow account. MHA’s actions are consistent with Congress’ intent that a business organization experiencing cash flow problems be allowed to file a Chapter 11 petition for reorganization, extend the period of its debts, and return to the status of a viable entity while paying creditors in full. Based upon the evidence presented, we agree with the bankruptcy court that MHA’s plan of reorganization was proposed in good faith. Accordingly, we hold that there is no reason to further burden the bankruptcy court with an evidentiary hearing concerning MHA’s pre-filing conduct.
 

 The bankruptcy court found that MHA’s plan of reorganization satisfies all eleven requirements of 11 U.S.C. § 1129(a) and thus the court confirmed the plan. The district court reversed, ruling that Prudential was impaired under section 1129(a)(8), and that there was not a proper determination of good faith under section 1129(a)(3). We have determined that the district court erred; Prudential was not impaired for purposes of section 1129(a)(8) and MHA did propose its plan of reorganization in good faith in accord with section 1129(a)(3). We note, however, the district court’s suggestion that MHA’s plan may also violate 11 U.S.C. § 1129(a)(7). According to the district court’s interpretation of section 1129(a)(7), even if Prudential is not impaired, it is entitled to reject any plan that provides it with less than it would receive upon liquidation. The district court concluded that, “[bjecause ... Prudential’s claim is impaired by MHA’s [sic] I need not resolve this issue.”
 
 In re Madison Hotel Associates,
 
 29 B.R. at 1010. To prevent further delay of the entry of MHA’s plan of reorganization, we rule that MHA’s plan does satisfy the requirement of 11 U.S.C. § 1129(a)(7). Prudential’s claim is not impaired and thus, pursuant to 11 U.S.C. § 1126(f) Prudential is
 
 deemed
 
 to have accepted the plan,
 
 notwithstanding
 
 any provision to the contrary. In light of this fact, Prudential cannot now reject the plan under 11 U.S.C. § 1129(a)(7).
 
 [15]
 
 Accordingly,
 
 *427
 
 we agree with the bankruptcy court that MHA’s plan of reorganization satisfies, all eleven requirements of 11 U.S.C. § 1129(a), and we hold that MHA’s plan of reorganization “shall be confirmed.”
 

 Ill
 

 We reverse and remand this case to the district court with instructions to reinstate the July 14, 1982 order of Judge Martin of the Bankruptcy Court for the Western District of Wisconsin, confirming MHA’s Chapter 11 plan of reorganization.
 

 [1]
 

 . MHA is joined in this appeal by MHA, Inc., a wholly-owned subsidiary and secured creditor of MHA.
 

 [2]
 

 . The record reveals that on September 13, 1974, MHA and CMIT entered into a sale-lease back arrangement whereby CMIT purchased the parcel of land underlying the Concourse Hotel, subject to Prudential’s first mortgage, and agreed to lease such realty to MHA for a monthly rental of $10,000 plus a percentage of MHA’s annual gross receipts for the first two years of the lease. Pursuant to the terms of this agreement, MHA has an option to purchase the leased land from CMIT for $1,000,000, and in the event of MHA’s default on rental payments, MHA is deemed to have exercised that option. To secure performance of MHA’s obligation to repurchase the realty, CMIT holds a mortgage on MHA’s interest in improvements, leasehold interest, and vendee's interest in the realty.
 

 In 1976, MHA began to default on its monthly rental payments to CMIT. On October 5, 1978, CMIT filed a Chapter 10 petition for reorganization in the United States District Court for the District of Massachusetts. Some four months later, on January 31, 1979, CMIT’s trustee in bankruptcy commenced a foreclosure action against MHA in the Circuit Court for Dane County, Wisconsin. No judgment has been entered to date in that state court proceeding.
 

 [3]
 

 . The lawsuit also named as a defendant, CMIT, the owner of certain parcels of MHA’s realty under the parties' sale-lease back arrangement of September 13, 1974.
 
 See supra,
 
 note 2.
 

 [4]
 

 . The record reveals that CMIT is also a party to the escrow account into which MHA pays monthly rental installments due CMIT under the terms of the parties’ sale-lease back arrangement of September 13, 1974.
 
 See supra,
 
 note 2.
 

 [5]
 

 . We note that pursuant to the Bankruptcy Amendments and Federal Judgeship Act, Pub.L. No. 98-353, 98 Stat. 333 (1984), technical revisions were added to Chapter 11 of the Bankruptcy Code, effective July 10, 1984. This case was argued prior to the enactment of the 1984 amendments, and thus all references in this opinion are to the Bankruptcy Code as it existed prior to the technical amendments. Title 11 U.S.C. § 305(a)(1) (1982) provides that:
 

 “(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
 

 (1)the interests of creditors and the debtor would be better served by such dismissal or suspension."
 

 [6]
 

 .Title 11 U.S.C. § 1112(b) (1982) provides, in pertinent part, that:
 

 ”[o]n request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title
 
 or may dismiss a case under this chapter,
 
 whichever is in the best interest of creditors and the estate, for cause, including—
 

 (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
 

 (2) inability to effectuate a plan;
 

 (3) unreasonable delay by the debtor that is prejudicial to creditors;
 

 (4) failure to propose a plan under section 1121 of this title within any time fixed by the court;
 

 (5) denial of confirmation of every proposed plan and denial of additional time for filing another plan or a modification of a plan;
 

 
 *415
 
 (6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;
 

 (7) inability to effectuate substantial consummation of a confirmed plan;
 

 (8) material default by the debtor with respect to a confirmed plan; and
 

 (9) termination of a plan by reason of the occurrence or a condition specified in the plan.
 

 (Emphasis added).
 

 [7]
 

 . Title 11 U.S.C. § 1129(a) (1982) provides that:
 

 "(a) The court shall confirm a plan only if all of the following requirements are met:
 

 (1) The plan complies with the applicable provisions of this chapter.
 

 (2) The proponent of the plan complies with the applicable provisions of this chapter.
 

 (3) The plan has been proposed in good faith and not by any means forbidden by law.
 

 (4)(A) Any payment made or promised by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in, or in connection with, the case, or in connection with the plan and incident to the case, has been disclosed to the court; and
 

 (B)(i) any such payment made before confirmation of the plan is reasonable; or
 

 (ii) if such payment is to be fixed after confirmation of the plan, such payment is subject to the approval of the court as reasonable.
 

 (5)(A)(i) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and
 

 (ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy.
 

 (B) The proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.
 

 (6) Any regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.
 

 (7) With respect to each class — •
 

 (A) each holder of a claim or interest of such class—
 

 (i) has accepted the plan; or
 

 (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date; or
 

 (B) if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such creditor's interest in the estate's interest in the property that secures such claims.
 

 (8) With respect to each class—
 

 (A) such class has accepted the plan; or
 

 (B) such class is not impaired under the plan.
 

 (9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—
 

 (A) with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;
 

 (B) with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4), or 507(a)(5) of this title, each holder of a claim of such class will receive—
 

 (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
 

 (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and
 

 (C) with respect to a claim of a kind specified in section 507(a)(6) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.
 

 (10) At least one class of claims has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class.
 

 (11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.”
 

 [8]
 

 . On July 28, 1983, this court denied Prudential’s motion to dismiss the appeal for lack of jurisdiction. We again note the jurisdiction of this court to entertain the present appeal under 28 U.S.C. §§ 1291, 1293(b) (1982).
 

 [9]
 

 . It is well-recognized that a Chapter 11 debtor’s plan of reorganization may cure the default of an accelerated loan. Title 11 U.S.C. § 1123(a)(5)(G) (1982) provides that:
 

 "A plan shall—
 

 (5) provide adequate means for the plan's execution, such as—
 

 (G) Curing or waiving any default.”
 

 [10]
 

 . The district court also relied upon the decision of the Virgin Islands bankruptcy court in
 
 In re Antilles Yachting, Inc.,
 
 4 B.R. 470 (Bankr.Virgin Islands 1980), to rule that Prudential’s claim was impaired for purposes of 11 U.S.C. § 1124(2). In that case, the bankruptcy court held that “a lien holder with a confessed judgment of foreclosure, containing a deficiency judgment ..., is ‘impaired’ if forced to forego payment of that judgment and instead to make a forced investment in a risky enterprise under a management demonstrated to the lien holder to be unreliable."
 
 Id
 
 at 474. In the instant case, it is undisputed that MHA has been making monthly payments into the court-approved escrow account. Unlike the facts in
 
 In re Antilles Yachting, Inc.,
 
 Prudential harbors no reasonable fear that MHA’s plan of reorganization is risky or that MHA will eventually be forced to liquidate. Indeed, the bankruptcy court found that under MHA’s plan, “the debtor’s projections [are] reasonable and reasonably capable of being met under the conditions that can presently be anticipated.” Thus, the bankruptcy court’s reasoning in
 
 In re Antilles Yachting, Inc.,
 
 is inapplicable to the facts present in this case.
 

 [11]
 

 . Our analysis in the present case is limited to the applicable law of foreclosure in Wisconsin. Thus, we do not address the issue of what effect a judgment of foreclosure has upon a Chapter 11 debtor’s attempt to cure the default of an accelerated loan in a state where the mortgage merges with the judgment, thereby vesting title in the mortgagee.
 

 [12]
 

 . The district court stated in footnote 4 of its opinion that "it appears that MHA’s plan impairs Prudential by altering rights that Prudential had under its mortgage and security agreement with MHA.”
 
 In re Madison Hotel Associates,
 
 29 B.R. at 1009 n. 4. The court concluded that "[b]ecause ... Prudential is impaired by the loss of its right to proceed to foreclosure, I need not decide whether these additional alterations of its contractual rights would constitute impairment of its claim within the meaning of § 1124.”
 
 Id.
 
 The bankruptcy court found, however, that none of Prudential's alleged alterations of rights, neither "individually, nor all of them taken as a group, are sufficient to demonstrate that Prudential would be impaired by the confirmation of the plan.” For purposes of this appeal, neither party has addressed the issue of MHA’s plan altering Prudential’s rights under the MHA mortgage and security agreement, and thus we adopt the bankruptcy court's well-reasoned and detailed finding, as it is not clearly erroneous.
 

 [13]
 

 . The district court’s erroneous ruling that Prudential’s claim was impaired for purposes of section 1129(a)(8) did not end the analysis. Title 11 U.S.C. § 1129(b)(1) provides in pertinent part:
 

 "if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan
 
 notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.”
 

 (Emphasis added). Accordingly, the district court reviewed the remaining elements of 11 U.S.C. § 1129(a), including the good faith issue of subsection (3).
 

 [14]
 

 . Title 11 U.S.C. § 1325(a)(3) provides that:
 

 "The court shall confirm a plan if—
 

 (3) the plan has been proposed in good faith and not by any means forbidden by law.”
 

 [15]
 

 . We note that the district court’s reference to
 
 In re Marston Enterprises, Inc.,
 
 13 B.R. 514, 518-20 (Bankr.E.D.N.Y.1981) to support its novel and unique interpretation of section 1129(a)(7) is in error. In that case, the issue was whether the requirement of section 1129(a)(10), that at least one class of claims accept the plan, could be satisfied by a creditor
 
 deemed
 
 to have accepted the plan under section 1126(f). In the present case, it is clear that all
 
 *427
 
 classes of claims, except Prudential, have affirmatively accepted MHA's plan.