**In re UVAS FARMING CORPORATION.**

**Bankruptcy No. 11–87–01667 R L.**

United States Bankruptcy Court, D. New Mexico.

Sept. 22, 1988.

**580**

Ella J. Fenoglio, Albuquerque, N.M., for UVAS Farming Corp.

William Davis, Albuquerque, N.M., for Laviana Investments.

## SUPPLEMENTAL MEMORANDUM OPINION

STEWART ROSE, Chief Judge.

THIS CHAPTER 11 plan confirmation before the Court presents a unique situation. By Court order, two competing plans were twice brought on for simultaneous confirmation. Plans were proposed by majority and minority shareholder groups of the debtor. On May 24, 1988, the second amended plan filed by the majority was denied confirmation and the minority's second amended plan was withdrawn. On August 18, 1988, a hearing was held on the minority's third amended plan and confirmation was denied. The Court made oral findings of fact and conclusions of law and a written order was entered on August 24, 1988. On August 19, 1988, the majority's third amended plan was confirmed. Oral findings and conclusions were made, and a written order was entered on August 24. From the order confirming the majority plan, the minority has appealed. This opinion is supplemental to the Court's oral findings and conclusions of August 18 and 19. The opinion is intended to memorialize the Court's oral statements on the unique legal issues presented. It neither adds to nor takes away from the prior oral rulings and does not affect the grounds or time for appeal.

In reaching its decisions, the Court has considered not only evidence offered at the confirmation hearings, but has also considered testimony and exhibits offered in prior evidentiary hearings in this case. This the Court may properly do. *In re Acequia, Inc.*, 787 F.2d 1352, 1358–59 (9th Cir.1986).

### A. Background

The debtor, UVAS Farming Corporation, is engaged in the winemaking and grape growing business near Deming, New Mexico. In the early 1980's, the Vuignier fami-

ly of Geneva, Switzerland began its project to establish a winery in the United States. In late 1982, a 460 acre tract of land was purchased and a winery building was then completed in June of 1984. Experiencing a need for additional funding, the Vuignier's, in 1984 and 1985, sought and obtained new equity investors for UVAS. UVAS also borrowed from some of its shareholders. UVAS began to suffer cash shortages in the spring of 1986 and ultimately filed a chapter 11 petition in August of 1987.

The Vuignier family controls the majority shareholder group of UVAS. The minority shareholder group, at the time the petition was filed, was made up of Laviana, N.V., a Netherlands Antilles corporation, Lodico, S.A., a Swiss corporation, Jean-Pierre Delaloye, a Swiss investment adviser, and four of his clients, the Swiss corporations Amarone Investments, N.V., Jaremko Investments, Vespara Trading Corporation and Lipovan Investments, N.V. After the petition was filed, Delaloye and his clients Amarone, Jaremko, Vespara and Lipovan bought up all the assets of Laviana and Lodico, including stock in the debtor and claims against the debtor. The transfers were accomplished by an assignment agreement of August 17, 1987. The minority shareholder group is now controlled by Delaloye. The self-named Delaloye Group also bought claims against the debtor held by First New Mexico Bank of Deming. During all of this time, Mr. Delaloye was, and still is, a director of the debtor.

Since the filing of the petition, it has become apparent from the pleadings, proceedings, and testimony that underlying the reorganization of the debtor is a struggle for control of the corporation between the two shareholder groups. The minority shareholders, the Delaloye Group, have embarked on a wrecking course by buying up loans and aggressively prosecuting those loans against the best interest of the debtor. They filed an involuntary petition against the president of the debtor. The Delaloye Group has sought, first, liquidation and second, reorganization on its own terms. Various claims held by the minority group survived a preference action only to succumb to a write down in

claims objection proceedings. The majority group, in control of the debtor, has gone out of its way to earn the mistrust of the other shareholders. The Court entertained an emergency motion to stop the covert nighttime shipment of wine upon which the minority held a lien. The Court had to allow security guards to be posted. The debtor finally disclosed, under Court order, the arrangements made for this year's grape harvest. The debtor simply wanted to keep secrets from the Delaloye Group. The debtor failed to propose a plan during the exclusive period available to it.

Upon one issue the Court has remained steadfastly consistent and will continue to do so: The shareholder fight will not be allowed to disrupt the reorganization of the debtor to the detriment of the unsecured creditors. To that end, using 11 U.S.C. § 1129(c) as its guide, the Court ordered that the majority and minority plans be brought on for simultaneous confirmation. Joint balloting was twice conducted. After three tries, the debtor has confirmed a plan.

### B. Denial of the Minority's Third Amended Plan

■ Briefly, the minority plan proposed a $6 million capital infusion consisting of cash, real and personal property, and debt forgiveness. It offered to the majority shareholders a right of first refusal to fund the plan, and thus become sole share-holders. If the majority declined, the minority would fund the plan and become the sole shareholder.

The sticking point in the minority plan was the contribution of two vineyards, now owned by the minority, to the debtor corporation. The first, called Farm # 3, consisting of 140 acres, was acquired by the minority in 1985 for $1.5 million. The second, called Farm # 4, consisting of 100 acres, was acquired by the minority in 1984 for $1.2 million. The testimony and exhibits revealed that the grapes on these two vineyards failed in 1988 due to a late frost. As well, the vines have apparently contracted root rot infestation, and their long term viability is doubtful. The plan valued the

**582**

vineyards at $1,780,000, after accounting for crop loss and a mortgage. The majority plan does not propose acquisition of these vineyards. In fact, the testimony suggested that they should be abandoned as unsuitable for growing grapes. Evidence on fair market value was not offered.

The inclusion of the two vineyards prompted an objection to confirmation under 11 U.S.C. 1129(a)(3), the good faith requirement. The Court sustained the objection, finding that though Farm # 3 may have some value as a vineyard, it was not as high as that proposed by the plan. The debtor should not be compelled to buy it. The same holds true for Farm # 4. It has no value as a vineyard. It serves no business purpose for this farm to be acquired by the debtor.

Good faith, under 11 U.S.C. § 1129(a)(3), means that the plan, under the facts and circumstances, "will fairly achieve a result consistent with the Bankruptcy Code." *In re Madison Hotel Assoc.*, 749 F.2d 410, 425 (7th Cir.1984). Requiring that two overpriced and unsuitable vineyards be bought is without economic justification. It is not consistent with the fiduciary duties owed to unsecured creditors by the equity security participants in the reorganizaton. The purchase of these farms would not turn the debtor into a profitable company. Confirmation of this plan would also frustrate the Court's earlier rulings on claims objection.

The minority plan lacks good faith and was not confirmed. The Court did not rule on the remaining elements needed to confirm the plan and attention turned to the majority shareholder plan.

### C. Denial of the Majority's Second Amended Plan

To understand the Court's confirmation of the majority's third plan over the objection of the minority shareholders, it is best to first examine the Court's refusal to confirm the majority's earlier plan.

A plan must be confirmed if it meets the twelve conditions in 11 U.S.C. § 1129(a). The debtor satisfied the Court that all conditions except (a)(8) and (a)(11) were met.

The debtor failed to satisfy (a)(8) because it could not cram down on the minority shareholders. Subsection (a)(11), feasibility, was not considered.

Subsection (a)(8) was not satisfied because two classes, subordinated shareholder loans and shareholders, were impaired and did not accept. The plan said that shareholders will receive nothing for their shares and shareholder loans are treated the same way.

In a cramdown situation, the Court must look to 11 U.S.C. § 1129(b)(1). It says that if all other elements needed to confirm the plan are established, except the affirmative vote of an impaired class, then the plan can be still confirmed if it does not discriminate unfairly and is fair and equitable with respect to the impaired non-consenting class.

Examples of what is fair and equitable are set out in Section 1129(b)(2). But they are only examples. "Includes" is not limiting. 11 U.S.C. § 102(3). Section 1129(b)(2)(C) deals with equity security holders, but only as to fixed redemptions or junior interests. These two examples do not apply to the plan proposed by the debtor.

This Court held, under the unique facts of this case, that the plan discriminates unfairly and is not fair and equitable. This was so because the plan achieves the goals of one contesting group of shareholders, the ones who happen to have control of the debtor. The plan permitted the majority shareholders to decide who had the right to contribute the new capital and become the new shareholders of the debtor. It did not give that right to each shareholder, according to his ownership of equity in the company. The parties were unable to cite to the Court any cases dealing with the precise problem. In the usual case there is no dissention among shareholders. They have all been wiped out or don't care, or they are all going to participate in the management.

The Court's ruling was that the plan is defective because it fails to offer, either to any one of the shareholders or to all of the shareholders, that vestigial opportunity to become the equity shareholders in the new

company, in accordance with their representative interests and rights in the company.

The ruling was not based on the absolute priority rule. This is not a case which purports to give any monetary advantage to any group of shareholders. The plan did not propose to give a shareholder group money or property. There is no distribution.

The Court was not protecting preemptive rights. It was protecting an expectation. It was a Court imposed requirement in addition to those things which are contained in 11 U.S.C. § 1129(b)(2).

In a nutshell, in this case, a plan is not fair and equitable and it discriminates unfairly if it squeezes out one of the two competing shareholder groups. On that basis, the debtor's second amended plan was not confirmed.

### D. Confirmation of the Majority's Third Amended Plan

■ Under the majority's plan, Class 8, shareholder loans, will once again receive no distribution. Class 9, equity security holders, will also receive no distribution. However, all current shareholders will have the right to subscribe for and purchase shares in the reorganized corporation, in proportion to their current respective holdings. Subscribing shareholders will be required to pay a certain amount of cash for each share. They will also be required to personally guarantee the loans to be used to fund payments to creditors under the plan. The plan contemplates a capital infusion of at least $3 million. Unsecured creditors will receive a dividend of between 25% and 30%.

Each voting class approved the plan except classes 8 and 9. The only objections to confirmation were raised by the minority shareholder group. Several technical objections were raised and disposed of. Testimony was taken on the issue of feasibility under 11 U.S.C. § 1129(a)(11). The president of the debtor testified that the company can operate profitably.

No other witnesses were called. The Court found the evidence to be overwhelmingly in favor of the feasibility of the debtor's plan.

The remaining objection, as before, was cramdown on classes 8 and 9 under 11 U.S.C. § 1129(b)(1). The reasoning used to confirm the majority's third plan is the same as used to deny the majority's second plan. The parties were again unable to cite any cases on this issue of shareholder rights.

The fact that this plan permits shareholders to subscribe in accordance with their present shareholder interest meets the requirement that it be fair and equitable, and that it not unfairly discriminate. The plan does not require some distribution to shareholders. The examples given of what is fair and equitable in Section 1129(b)(2) have no application. What is fair and equitable covers more things than are in those examples.

Here, no junior holder will receive or retain any property. Only the Court created right to participate in the reorganization of the debtor is being protected.

All of the elements of 11 U.S.C. § 1129 being satisfied, the debtor's third amended plan was confirmed.

### CONCLUSION

This opinion memorializes the Court's earlier rulings with respect to confirmation. Findings of fact and conclusions of law were made orally at the hearings. Appropriate orders have been entered.