**In re Winifred DOERSAM, Debtor.**

**STATE OF OHIO, STUDENT LOAN COMMISSION, Plaintiff-Appellee,**

v.

**Winifred DOERSAM and George W. Ledford, Defendants-Appellants.**

No. 87-3456.

United States Court of Appeals,
Sixth Circuit.

Argued March 28, 1988.

Decided June 15, 1988.

George W. Ledford (argued), Vandalia, Ohio, trustee.

Charles A. Fox, Dayton, Ohio, for Doersam.

Gregory Severance (argued), Columbus, Ohio, for plaintiff-appellee.

Before KEITH, MARTIN and NELSON, Circuit Judges.

KEITH, Circuit Judge.

Appellant, Winifred Doersam, appeals the judgment of the district court affirming the decision of the bankruptcy court sustaining objections by appellee, State of Ohio, Ohio Student Loan Commission (OSLC) to confirmation of her Chapter 13 plan. For the following reasons, we AFFIRM.

## I.

Doersam signed as the borrower on three student loans made to her by First Federal Savings and Loan, Lima, Ohio, and guaranteed by OSLC, totaling $10,000.00, to finance her graduate education at the University of Dayton. Doersam also signed as the co-signer for a $5,000.00 student loan for her daughter, also made by First Federal Savings and Loan and guaranteed by OSLC. With the use of these loans, Doersam obtained a Master's degree in computer science from the University of Dayton in 1985. While working towards that degree, she was able to secure a position as a systems analyst with NCR Corporation, which required her to obtain a Master's degree in order to retain her position at an annual salary of approximately $24,-000.00.

On November 6, 1985, approximately six weeks before her graduation, and before the first payment on her student loans was due, Doersam filed a petition and plan under Chapter 13 of the Bankruptcy Code. Her plan proposed the payment of 19% of her unsecured debt to her creditors, at a rate of $375.00 per month over thirty-six months. Doersam's total unsecured debt was $18,418.55, 81% of which was comprised of the outstanding student loans.

Doersam's schedules provide for payment of rent of $300.00 per month and food of $400.00 per month. Her listed dependents included her twenty three year-old daughter and one year-old granddaughter. At the time of her filing, her daughter was employed in the Ohio Work Program, a program designed to assist welfare and Aid to Dependent Children recipients, and for which she was paid a small salary.

OSLC filed objections to confirmation of the plan on January 6, 1986, thirteen days after the deadline set for objections. Counsel for OSLC represented that OSLC received notice of the Chapter 13 filing on December 27, 1985, three days after the final date for filing objections. First Federal was listed as an unsecured creditor in Doersam's schedules that were filed with the bankruptcy court; however, Doersam did not list OSLC, the guarantor of the loans, as a creditor in her schedules.

The bankruptcy court chose not to deal with the "elusive bad faith question," but did find that there was no hardship situation which prevented Doersam from satisfying the student loan debt. 60 B.R. 130. On appeal, the district court held that Doersam's plan was filed in bad faith in violation of 11 U.S.C. § 1325(a)(3).

## II.

Doersam's principal argument on appeal is that the district court erred in affirming the order of the bankruptcy court denying confirmation of her proposed plan on the ground that it was filed in bad faith in violation of 11 U.S.C. § 1325(a)(3).[1]

■ While not central to its holding, in *Memphis Bank & Trust Co. v. Whitman,*

---

1. 11 U.S.C. § 1325(a)(3) provides, in relevant part:

(a) The court shall confirm a plan if—

\* \* \* \* \* \*

(3) the plan has been proposed in good faith and not by any means forbidden by law;

\* \* \* \* \* \*

692 F.2d 427 (6th Cir.1982), this court expressed its views on how the good faith requirement of § 1325(a)(3) should be construed:

> The 'good faith' requirement is neither defined in the Bankruptcy Code nor discussed in the legislative history. The phrase should, therefore, be interpreted in light of the structure and general purpose of Chapter 13. Obviously, the liberal provisions of the new Chapter 13 are subject to abuse, and courts must look closely at the debtor's conduct before confirming a plan.... The view that the Bankruptcy Court should not consider the debtor's pre-plan conduct in incurring the debt appears to give too narrow an interpretation to the good faith requirement. See, e.g., *Matter of Kull*, 12 B.R. 654, 659 (D.C.S.D.Ga.1981) (among the facts a court should consider to determine whether a debtor has acted in good faith are 'the circumstances under which the debtor contracted his debts and his demonstrated bona fides, or lack of same in dealing with his creditors.')

> One way to refuse to sanction the use of the bankruptcy court to carry out a basically dishonest scheme under Chapter 13 is to deny confirmation to the proposed plan. When the debtor's conduct is dishonest, the plan simply should not be confirmed. Unless courts enforce this requirement, the debtor will be able to thwart the statutory policy denying discharge in Chapter 7 cases for dishonesty.

> Another way to deal with the problem when the conduct is questionable but is not shown to be dishonest, as the Bankruptcy Court found it to be in the instant case, is to require full payment in accordance with the contract.

692 F.2d at 431–32. Thus, under *Memphis Bank & Trust Co.*, the totality of the debtor's conduct, both before and after the plan is submitted, is to be considered when evaluating whether the debtor has acted in good faith. *Id.*

■ In evaluating good faith in specific situations, we find helpful, as did the district court, the factors enumerated in *In re Kitchens*, 702 F.2d 885 (11th Cir.1983):

1. the amount of debtor's income from all sources;

2. the living expenses of the debtor and his dependents;

3. the amount of attorney's fees;

4. the probable or expected duration of the debtor's Chapter 13 plan;

5. the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

6. the debtor's degree of effort;

7. the debtor's ability to earn and the likelihood of fluctuation in his earnings;

8. special circumstances such as inordinate medical expenses;

9. the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;

10. the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealing with his creditors;

11. the burden which the plan's administration would place on the trustee.

702 F.2d at 888–89; *In re Estus*, 695 F.2d 311–17 (8th Cir.1982). These factors should not be viewed as exclusive; in the final analysis, good faith should be evaluated on a case-by-case basis in light of the structure and general purpose of Chapter 13. *In re Estus*, 695 F.2d at 316; *Deans v. O'Donnell*, 692 F.2d 968, (4th Cir.1982); *In re Rimgale*, 669 F.2d 426, 431 (7th Cir.1982).

■ The fact that all or part of the debt consists of educational loans presents special problems. Ordinarily, such loans are not dischargeable under Chapter 7. 11 U.S.C. § 523(a)(8). The mere fact that a debtor attempts to discharge a debt that would be nondischargeable under Chapter 7 is not sufficient in itself to warrant a finding that the plan was not proposed in good faith. *In the Matter of Lambert*, 10 B.R. 223, 225 (Bankr. E.D.N.Y.1981). However, whether the debt would be non-

dischargeable under Chapter 7 is a factor which is relevant to the determination of good faith. *In re Kitchens*, 702 F.2d at 889; *In re Estus*, 695 F.2d at 311.

Moreover, the debt which the debtor seeks to discharge is also germane to the question of good faith: *In re Kitchens*, 702 F.2d at 889; *In re Estus*, 695 F.2d at 311; *Dean v. O'Donnell*, 692 F.2d at 972. Here, the repayment structure of educational loans is of particular relevance:

> Unlike most commercial loans which are granted only upon a showing of credit worthiness and ability to make repayment, guaranteed student loans, on the other hand are granted only upon a debtor establishing need. Unlike most loans, guaranteed student loans do not require a borrower to commence repayment until the borrower has completed his or her education. It is therefore most questionable when a debtor accepts a student loan and then, prior to its maturity, attempts to extinguish the debt in bankruptcy without ever making an attempt to repay it. It stretches credulity to say that the debtor made an honest effort to pay these debts as required by 11 U.S.C. § 1325(a)(3).

*State Education Assistance Authority v. Johnson*, 43 B.R. 1016, 1021 (E.D.Virginia 1984).

Based on the foregoing considerations, the district court correctly found that Doersam's plan had not been proposed in good faith. The bulk of Doersam's unsecured indebtedness consists of student loans which would not have been dischargeable under Chapter 7. Doersam made absolutely no effort to repay these loans de-spite their long-term character, and despite the fact that they were instrumental in her securing a position paying approximately $24,000.00 per year. Indeed, her student loans had not yet become due at the time that she submitted her plan. Moreover, as both the bankruptcy court and district court noted, the listing of a working daughter and a minor grandchild for whom Doersam is not legally responsible, and the budgeting of $400.00 per month for food based on those questionable listings, are further grounds for finding that the plan was not filed in good faith.

For the foregoing reasons, the judgment of the district court is AFFIRMED.[2]

---

**2.** Doersam also argues on appeal that (1) the district court erred in finding that the proofs of claim filed by OSLC on March 10, 1986, after the February 26th confirmation hearing but before the bankruptcy court's decision was rendered on March 18, were properly part of the record on appeal to the district court; (2) the district court erred in finding that OSLC had standing to object to confirmation because OSLC had not filed its formal proof of claims at the time of the confirmation hearing; and (3) OSLC had the burden of persuasion, and the district court erred in failing to find that OSLC had not carried its burden.

We find no merit in any of these arguments. Concerning (1) and (2), we agree with the district court that "the real source of the evidentiary difficulties in this case was the debtor's failure to identify [OSLC] as a creditor in her Petition for Bankruptcy, and the consequent failure of [OSLC] to receive notice of the debtor's plan until three days after the cutoff date for objections to be filed." As to (3), given our agreement with the district court's resolution of (1), we also agree that the issue of upon which party the burden of persuasion lies is moot, because the proofs of claim are uncontroverted evidence of Doersam's liabilities to OSLC.