**In re Karl M. McKINNEY, Cynthia A. McKinney, Appellants.**

No. C2–89–870.

United States District Court, S.D. Ohio, E.D.

April 27, 1990.

David C. Lasky, Columbus, Ohio, for appellants.

Jeffrey M. Kellner, Worthington, Ohio, for trustee.

## OPINION AND ORDER

GRAHAM, District Judge.

Appellants Cynthia A. McKinney and Karl M. McKinney filed this appeal from a September 15, 1989 order of the United States Bankruptcy Court dismissing their Chapter 13 bankruptcy case for want of prosecution. Since the Chapter 13 trustee has declined to take a position on the appeal at this time and the appellees have failed to file timely briefs in response to the appellants' brief, the Court will proceed to consider the appeal.

Appellants filed their Chapter 13 petition on June 9, 1988. Some time thereafter, appellants filed their first plan of reorganization, which, pursuant to an opinion and order filed on September 22, 1988, the bankruptcy court refused to confirm. On October 5, 1988, appellants filed an amended plan of reorganization, which the bankruptcy court also declined to confirm. This order denying confirmation was filed November 16, 1988. The bankruptcy court concluded this order with the following language:

> The Court's requirements having been fully restated, and since the debtors' amended plan of reorganization does not comply with those requirements, their amended plan is denied, and the debtors are granted twenty (20) days from the date of entry of this order to propose a third amended plan of reorganization. *If no such plan is proposed within that twenty (20) days period, this matter will be dismissed, without further notice.*

(Emphasis added). No amended plan was forthcoming nor was an appeal sought from the orders denying confirmation. Ten months having elapsed without any further action on the case, the bankruptcy court filed an order of dismissal on September 15, 1989.

Appellants do not contest the factual findings of the bankruptcy court and have submitted this appeal on their brief and the factual statements in the bankruptcy court's September 22 and November 16, 1988 opinions. Mr. McKinney's employ-

ment is the sole source of the family's income.

The McKinneys' schedules reveal unsecured debts totalling $12,475.78. That amount includes a $10,000 student loan obligation to Bank Ohio National Bank and a $170.70 student loan obligation to Franklin University. Approximately 81% of the debtors' unsecured debt is comprised of student loans. Karl McKinney testified that he obtained these student loans from Bank Ohio so that he could afford to go to school. He graduated from Franklin University in December, 1986 with a bachelor's degree in business management. While attending school, Mr. McKinney worked fulltime at Dabco Pharmacy, Inc. He is presently working at Dabco.

Mr. McKinney testified that following graduation, he attempted to obtain other employment. He said that he has applied for approximately 30 jobs with no success. He further stated that he remains employed with Dabco at an annual salary of approximately $16,000.00. Mr. McKinney is married and has two young children. His family's monthly expenses include rent of $335.00, utilities of $175.00, food of $325.00, telephone of $10.00, medical expenses of $25.00, and auto expenses of $35.00. His monthly obligation to Bank Ohio is $127.29. He has made one payment toward satisfying that obligation. Mr. McKinney stated that he would not be able to feed his family if he was required to satisfy the Bank Ohio loan in full.

Yet, Mr. McKinney testified that prior to his graduation from Franklin University, he was working at Dabco for less pay. Upon graduation, his salary was increased to $16,000.00 per year. He said that he would not have received that increase had it not been for his obtaining his degree at Franklin University. Mr. McKinney testified that his prospects at Dabco for future advancement are negible [sic] but that he continues to have hope that he will be able to find other employment to which he can apply his business education.

In re McKinney, Case No. 2–88–02911 at 3–4 (Bankr.S.D.Ohio Sept. 22, 1988). Appellants allege that they have a monthly disposable income of $1,131.36.

Appellants' first plan of reorganization proposed a schedule of $76.36 per month to be paid to their creditors. The length of the plan was to be thirty-six months, with a 10.5% dividend to be paid to their unsecured creditors. Relying upon the decision of the United States Court of Appeals for the Sixth Circuit in In re Doersam, 849 F.2d 237 (6th Cir.1988), the bankruptcy court held that the plan had not been "proposed in good faith" as required by 11 U.S.C. § 1325(a)(3), and therefore, denied confirmation.

Appellants' amended plan merely increased the duration of the plan "from 36 months to 58 months, which in turn has increased the dividend to be paid to unsecured creditors from 10.5% to 20%." In re McKinney, 93 B.R. 135, 136 (Bankr.S.D. Ohio 1988). The bankruptcy court again denied confirmation pursuant to 11 U.S.C. § 1325(a)(3) and In re Doersam.

If the Court were to confirm the debtors' amended Chapter 13 plan of reorganization, it would be acting contrary to the 6th Circuit Court of Appeals' holding in the Doersam case. This Court's interpretation of the court's holding in Doersam is that a Chapter 13 plan of reorganization that has the effect of discharging debts that would not be dischargeable under Chapter 7 [i.e. government-guaranteed student loans] violates the good faith requirement under 11 U.S.C. § 1325(a)(3).

In re McKinney, 93 B.R. at 136.

Appellants contend that In re Doersam does not require a Chapter 13 plan of reorganization to provide for 100% repayment of student loans in order to be proposed in good faith, and therefore, the bankruptcy court erroneously refused to confirm their proposed plans and dismissed their case.

The Court agrees that In re Doersam is the controlling Sixth Circuit case on this issue. In that case, the debtor had obtained student loans in order to pursue a master's degree in computer science.

While working toward this degree, she secured a position as a systems analyst with an annual salary of $24,000. The understanding with her employer was that she would be required to obtain her master's degree in order to retain her salaried position. Although the debtor was single, she provided room and board for her twenty-three year old daughter, who received public assistance, and her one year old granddaughter. Approximately six weeks before the first payment on the student loans was due, the debtor filed a Chapter 13 bankruptcy petition. Eighty-one percent of her total unsecured debt of $18,418.55 was composed of outstanding student loans. Her plan of reorganization provided for $375 per month to be paid to her creditors over a period of thirty-six months, thus resulting in a 19% dividend to her unsecured creditors. *In re Doersam*, 849 F.2d at 238.

Holding that the plan was not filed in good faith pursuant to 11 U.S.C. § 1325(a)(3), the district court affirmed the bankruptcy court's denial of confirmation. The Court of Appeals affirmed this holding.

According to the Court of Appeals, "the totality of the debtors's conduct, both before and after the plan is submitted, is to be considered when evaluating whether the debtor has acted in good faith." *In re Doersam*, 849 F.2d at 239 (citing *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427, 431–32 (6th Cir.1982)). The Court of Appeals also enumerated certain factors it found helpful in evaluating whether the debtor acted in good faith.

1. the amount of debtor's income from all sources;

2. the living expenses of the debtor and his dependents;

3. the amount of attorney's fees;

4. the probable or expected duration of the debtor's Chapter 13 plan;

5. the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

6. the debtor's degree of effort;

7. the debtor's ability to earn and the likelihood of fluctuation in his earnings;

8. special circumstances such as inordinate medical expenses;

9. the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;

10. the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealing with his creditors;

11. the burden which the plan's administration would place on the trustee.

*In re Doersam*, 849 F.2d at 239 (quoting *In re Kitchens*, 702 F.2d 885, 888–89 (11th Cir.1983)). These factors are not exclusive since "good faith should be evaluated on a case-by-case basis in light of the structure and general purpose of Chapter 13." *Id.*

■ As noted by the appellants in the instant case, "[t]he mere fact that a debtor attempts to discharge a debt that would be nondischargeable under Chapter 7 is not sufficient in itself to warrant a finding that the plan was not proposed in good faith." *Id.* Therefore, confirmation cannot properly be withheld from a Chapter 13 plan merely because it does not provide for 100% repayment of outstanding student loans. However, this "is a factor which is relevant to the determination of good faith." *Id.* at 240.

■ To the extent that the bankruptcy court in this case suggested that "a Chapter 13 plan ... that has the effect of discharging debts that would not be dischargeable under Chapter 7 violates the good faith requirement," *In re McKinney*, 93 B.R. at 136, it was in error. However, the Court would note that the bankruptcy court stated the proper legal rule in its September 22, 1988 opinion and order and did in fact apply the *In re Doersam* analysis in both of its decisions. Indeed, this Court finds that the bankruptcy court properly followed the dictates of *In re Doersam* in refusing to confirm the appellants' plans of reorganization and in ultimately dismissing the case.

In particular, the Court adopts the following reasoning of the bankruptcy court: [A]lthough Mr. McKinney's education may not have provided him with short-term opportunities for better employment, those loans have enabled him to receive a higher salary at Dabco, and therefore have benefitted him and his family. Furthermore, this Court cannot conclude that Mr. McKinney's education will not benefit him in the future on the basis of the time and effort that has ensued since obtaining his degree. His testimony was that he expects and anticipates that he will receive better employment as a result of that education. Also, the Court observes that the McKinneys have made little or no effort to repay or to restructure these loans in spite of their long-term nature.

*In re McKinney*, 93 B.R. at 138–39.

This Court would further note that the appellants filed for bankruptcy no more than a year and a half after the first payment on the student loans was due. In addition, the difference between appellants' disposable monthly income and their identified expenses is $226.36, more than enough to cover the monthly student loan payments, although the court recognizes that other expenses may well arise periodically. Also, Mr. McKinney's job at Dabco Pharmacy was not contingent upon his obtaining a master's degree, and he should have been aware of his prospects for advancement prior to incurring his student loan obligations.

Finally, the bankruptcy court outlined in its November 16, 1990 ruling what an acceptable plan would entail.

Prior to *Doersam*, this Court in previous rulings on student loans has not required that debtors fully pay those loans within their plans of reorganization, and within the parameters of 11 U.S.C. § 1322(c). Rather, this Court has approved the debtor's plan when it proposed to treat the student loan as a long-term debt, with any arrearage to be cured within the plan, and regular payments to continue through the plan, as well as after plan completion pursuant to 11 U.S.C. § 1322(b)(5).

This provides the debtors with an alternative when it is not feasible to pay the student loan within the sixty-month limitation of a plan. It is the opinion of this Court that its prior ruling is still viable as to that alternative and is not in conflict with the *Doersam* decision.

*In re McKinney*, at 136–37.

Therefore, the Court concludes that the bankruptcy court's decisions denying confirmation were proper, and the appellants' failure to file a third amended plan or otherwise prosecute their case was not excusable. Therefore, the September 15, 1989 decision of the bankruptcy court dismissing appellant's Chapter 13 bankruptcy case for want of prosecution is AFFIRMED.

It is so ORDERED.