**In re Ann E. CARPICO, Debtor.**

**Bankruptcy No. 2–89–06154.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

July 11, 1990.

William H. Peoples, Westerville, for debtor.

Frank M. Pees, Worthington, Ohio, Chapter 13 Trustee.

Gregory S. Severance, Asst. Atty. Gen., Columbus, Ohio.

ORDER DENYING CONFIRMATION

DONALD E. CALHOUN, Jr.,
Bankruptcy Judge.

This cause came on for hearing on May 10, 1990 to consider confirmation of the

Debtor's Chapter 13 Plan. Present at the hearing were Frank Pees, the Chapter 13 Trustee and William Peoples, representing the Debtor. This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this District. This is a core proceeding under 28 U.S.C. § 157(b)(2).

On October 31, 1989, Anne Carpico ("Debtor") filed for relief under Chapter 13 of the Bankruptcy Code. The Debtor's Plan proposed payments of $125.00 per month for 24 months, and $275.00 per month for the remaining 23 months, resulting in an 8% dividend to her unsecured creditors. The Debtor's unsecured debt $31,276.42. Among other expenses, the Debtor's monthly budget reflects payments of $525 for rent, $270 for electricity, $100 for clothes, $80.00 for laundry and drycleaning, and $135 for monthly miscellaneous expenses.

A confirmation hearing was held on January 4, 1990. The Court received testimony from the Debtor as to the circumstances surrounding certain student loan debts, and the basis for her monthly expenses. However, the Court was unsatisfied with the Debtor's budget and Plan, particularly in light of the fact approximately $13,000 of the Debtor's unsecured debt is comprised of outstanding student loans. Upon the Debtor's request, the Court denied confirmation, and afforded the Debtor an opportunity to amend her Plan so as to make a more substantial effort to pay her student loan debts. However, the Amended Plan as filed on February 20, 1990 was identical to the Debtor's original plan. The Court held a hearing on May 10, 1990 to determine good faith under § 1325(a)(3). At the hearing, the Debtor did not present any new evidence, but rather relied on the testimony given at the January hearing.

The Debtor's testimony revealed that at the time she was attending college to obtain a degree in pharmacy, she was married and had two children, aged two years and eight months. The Debtor's husband was unemployed for the first couple of years of their marriage, and eventually filed for bankruptcy. As a result, the Debtor needed to obtain student loans in order to continue her education. She also received several scholarships and grants which she used to pay her tuition. According to the Debtor, the student loans she obtained were used to pay for her living expenses and various other expenses while she was attending school, rather than directly financing her education as tuition. As such, the Debtor contends that these particular loans, unlike most student loans which are used for tuition, books, and the like, did not increase or advance her education directly, and therefore are an exception to this Court's general policy requiring the substantial repayment of student loans.

■ In order for a plan to be confirmed, it must meet six criteria established by Congress, which are found in 11 U.S.C. § 1325(a). The criterion of importance in this particular case is § 1325(a)(3), which states in pertinent part:

(a) The Court shall confirm a plan if—

(3) the plan has been proposed in good faith and not by any means forbidden by law.

Congress, however, has not provided the courts with a precise definition of good faith to be used in determining whether a particular debtor's plan deserves confirmation. *In re Estus*, 695 F.2d 311 (1982 8th Cir.). Thus, in order to provide assistance to courts attempting to find good faith or lack thereof, the court in *In re Caldwell*, 851 F.2d 852 (6th Cir.1988) enumerated the following factors to be used in evaluating whether a debtor has acted in good faith:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee.

See also *In re Doersam*, 849 F.2d 237, 239 (6th Cir.1988); *In re McKinney*, 118 B.R. 968, 970 (S.D.Ohio 1990). Of course, these factors are not exhaustive of all the elements that should be considered in assessing good faith. Good faith is to be evaluated on a case-by-case basis in light of the structure and general purpose of Chapter 13. *McKinney*, at 6.

■ Looking at the Debtor's plan in light of the above mentioned factors, it is clear that the Debtor's plan lacks good faith. First, the Debtor's plan is scheduled to run for only 47 months, instead of the possible 60 months. Although, the minimum 36 month time period has been satisfied, courts continually allow an extension of time for a showing of good cause. This Court has consistently held that an increase in the dividend paid to creditors meets that requirement. Because the dividend of the Debtor's Plan is only 8%, and the Debtor has chosen to exceed the 36 month time period, the Court is of the opinion that the Debtor's Plan should be extended to run for 60 months to provide a greater dividend to the unsecured creditors. Moreover, this Court in previous rulings with respect to student loans, has not necessarily required that debtors fully pay those loans within their Chapter 13 plans and within the parameters of 11 U.S.C. § 1322(c). Rather, this Court has approved a debtor's plan when it proposed to treat the student loan as a long-term debt, with any arrearage to be cured within the plan, and regular payments to continue during the term of the plan, as well as after the plan's completion, pursuant to 11 U.S.C. § 1322(b)(5). *McKinney, slip op.* at 8.

■ Second, the Debtor essentially is seeking to discharge a student loan that under Chapter 7 would not be dischargeable. The fact that student loans are nondischargeable under Chapter 7 is not sufficient evidence in itself to warrant a finding that the plan was proposed in bad faith; however, this is a factor that is relevant to the determination of good faith. *Doersam*, 849 F.2d at 239. This is tied to another factor to be considered by the Court: the type of debt a debtor seeks to discharge is also relevant to good faith. In the instant case, the fact that approximately 30% of the Debtor's unsecured debt consists of educational loans presents a particular problem. See, *Doersam*, 849 F.2d at 239. Looking at the Debtor's employment history, it is clear that without the Debtor's degree as a pharmacist, she would not have nearly the income and the earning potential that she does today. Prior to attending college, the Debtor was employed as a florist earning $7.00 per hour. Currently, the Debtor is earning $17.00 per hour; an increase of approximately $19,000 a year in gross income. The student loans the Debtor obtained provided her with an opportunity to further her education, thereby increasing her lifetime earning potential, and employability. The fact that the Debtor allegedly applied these student loans for living expenses and not tuition is an illusory distinction. Although the Debtor may have used money she received from grants and scholarships to pay tuition, it clearly would have been impossible for the debtor to attend school without the assistance of student loans. Furthermore, the Debtor never would have been able to obtain the low-interest student loans in the first place, if she had not been pursuing an education. The benefit of student loan programs as seen in *McKinney*, requires a good faith response and effort by the Debtor to repay those loans. Because of the nature and purpose of student loans, all feasible efforts and arrangements should be made to provide for their repayment. *In re Doer-*

*sam,* 849 F.2d 237 (6th Cir.1988); *In re McKinney,* 118 B.R. 968 (S.D.Ohio 1990).

Third, the Plan seems to ignore the potential future income increases that the Debtor is likely to receive, due to the particular field of employment she is in. No testimony or other evidence was submitted by the Debtor on this point. Therefore, the dividend the Debtor proposes to pay to her unsecured creditors does not seem to reflect an accurate assessment of her future income.

Additionally, although the Court does not want to impose its standards on the lifestyle of the Debtor, the Court is not satisfied with the basis for the Debtor's statement of expenses. "How much sacrifice to require of people in debt—is a key question in bankruptcy." Boshkoff, *As We Forgive Our Debtors in the Classroom,* 65 Ind.L.J. 64 (1989). However, in terms of this Court's experience, the Debtor's submitted budget in the present case is out of line with other budgets that have been submitted in Chapter 13 cases. This evidence leads the Court to believe therefore, that the Debtor is not making the kind of sacrifices that are required for granting of relief under Chapter 13. The role of a Chapter 13, as originally designed, is to provide debtors in financial trouble with an opportunity and means to repay their creditors in a respectable manner. As such, there are certain sacrifices that must be made by a debtor who chooses to pursue the remedies of Chapter 13.

In light of the foregoing, confirmation of the Debtor's Plan is denied. The Debtor has ten (10) days in which to file an amended plan. Failure to do so will result in dismissal of this case without further notice.

IT IS SO ORDERED.