In re Alan David GODDARD, Debtor.

**NEW JERSEY LAWYERS' FUND FOR CLIENT PROTECTION, Plaintiff,**

v.

**Alan David GODDARD, Defendant.**

**Civil No. 97–0421 GEB.**

United States District Court,
D. New Jersey.

July 7, 1997.

Michael T. McCormick, Trenton, NJ, for New Jersey Lawyers' Fund for Client Protection.

Joseph M. Casello, Broege, Neumann, Fischer & Shaver, Manasquan, NJ, for Alan David Goddard.

## MEMORANDUM OPINION

BROWN, District Judge.

This matter comes before the Court on the appeal of the New Jersey Lawyers' Fund for Client Protection (the "Fund" or "Appellant") of the Bankruptcy Court's Final Order of December 10, 1996 ("December 10th Order"), wherein the Bankruptcy Court denied the Fund's motion to dismiss the Chapter 13 petition (the "Petition") of Alan David Goddard (the "Debtor" or "Appellee") and confirmed the Debtor's modified Chapter 13 plan (the "Modified Plan"). *See In re Goddard,* No. 96–30281 (Bankr.D.N.J. Dec. 10, 1996) (WHG). For the reasons set forth in this Memorandum Opinion, the Court will: (1) reverse the Bankruptcy Court to the extent it found that the Debtor accurately reported his debts and expenses; and (2) vacate the December 10th Order and remand for further proceedings consistent with this Opinion.

## I. BACKGROUND

The Debtor was admitted to the practice of law in New Jersey in 1970. On July 10, 1985, he was disbarred from practice by Order of the Supreme Court of New Jersey. The Debtor's disbarment was part of a plea agreement in which he was convicted and served two years in federal prison for tax evasion and "helping [his] clients hide their assets from the IRS." *See* Deposition of Alan David Goddard ("Goddard Dep.") at 35, attached to Appellant's Designation of Items to be Included in the Record on Appeal ("Appellant's Record") as Exh. 8.

The Appellant is an entity established by the Supreme Court of New Jersey under N.J. CT. R. 1:28–1 *et seq.* Its purpose is to reimburse clients for losses caused by the dishonest conduct of members of the Bar of New Jersey. When a claim is made, the Fund conducts an investigation to determine if the client's loss is the result of the attorney's dishonest conduct. Both the claimant and the respondent attorney are notified of all findings and invited to submit documentation of their position with regard to the claim. All documentation is reviewed and

considered by the Fund's Board of Trustees. Claimant and respondent may be invited to appear personally before the Board to offer their own testimony. Each party may submit additional, newly discovered evidence, and request a reconsideration of the Trustees' decision, if the decision is contrary to their interests. Once a claim is paid, the Fund takes an assignment of the victim's rights and pursues recovery from the responsible party or parties.

In the instant case, the Fund first paid the claim of *Timothy and Sharyn Downey v. Goddard* on May 22, 1987 in the amount of $325.50. The Trustees found that the Debtor failed to purchase title insurance for the Downeys while representing them in a real estate transaction, although he collected the premium to do so. Subsequently, in April, 1989, the Fund paid the claim of *Louis and Stella Davino v. Goddard* in the amount of $50,000. In this matter, the Debtor had represented both the Davinos as buyers and Racine Landscaping as the seller in a real estate transaction. The Debtor was acting as the court appointed Administrator with Will Attached for the estate of the deceased sole owner and director of Racine Landscaping. At the time of the sale, there were tax liens against the subject property in the amount of $48,166.43, which exceeded the property's $45,000.00 sale price. The Debtor, however, advised the Davinos that the $45,000 sale price would be sufficient to satisfy all liens on the property, and conducted the closing. When the Davinos attempted to sell the property in 1988, they discovered that the Debtor had neither paid off the liens nor forwarded the $361.80 title insurance fee they had given him for the insurance provider. As a result, no title insurance was issued and the liens had by then grown to $87,046.80. The Fund's award of $50,000 represented the maximum payable at that time, under court rule, of $25,000 per claimant.

Thereafter, the Fund filed suit against the Debtor and Judgment was entered by the Superior Court of New Jersey against the Debtor on December 20, 1990 for the full amount paid on the Debtor's behalf of $50,325.50. The Debtor failed to respond to the Appellant's subsequent attempts to collect the judgment amount, and on July 14, 1995, the Appellant sent the Debtor an Information Subpoena in accordance with N.J. Ct. R. 4:59–1(e). The Debtor refused service of the Subpoena and did not respond to the Appellant's motion to have him held in contempt for noncompliance. The Debtor was held in contempt and an Order for his arrest was entered by the court on September 29, 1995.

Because of the Appellant's continued efforts to serve this Order, the Debtor filed a voluntary petition pursuant to Chapter 13 of the Bankruptcy Code. See Transcript of December 10, 1996 Hearing ("Hearing Tr.") at 19 ("[T]he immediate reason [for filing a bankruptcy petition] was that back in probably October or even September of [1995] someone had come to my house trying to serve me with a petition of some kind. I think it was for my arrest within 10 days of the time of the actual service. "). In his Petition, the Debtor listed all of his creditors, including the Fund, and the proposed Chapter 13 plan ("Original Plan") filed with the Petition required Mr. Goddard to contribute $145 per month for a period of thirty-six (36) months toward the repayment of his debts.

The Appellant filed an objection to confirmation of the Debtor's Original Plan on April 9, 1996. *See* Appellant's Record, Exh. 3. Essentially, the Fund objected on the grounds that the Debtor's schedules contained "inaccurate" information and that the Debtor was not contributing all of his disposable income to the Original Plan. The Fund maintained that the inaccuracies, as well as the circumstances surrounding the filing, reflected that the Original Plan had not been proposed in good faith. The Objection requested the dismissal of the Debtor's Chapter 13 Petition.

In July, 1996, the Debtor filed a Modified Plan as a result of the filing of a priority proof of claim by the Internal Revenue Service. According to the filed proof of claim, the IRS held a priority claim as a result of certain trust fund taxes which the debtor failed to pay in 1984. Given the IRS priority claim, the Debtor filed a Modified Plan providing for payment of that claim in the amount of $4,802.51. *See* Modified Chapter 13 Plan, attached to Appellant's Record as

Exh. 5. However, the Modified Plan provided for no payment to unsecured creditors.

The Confirmation Hearing in this matter was first adjourned by the Bankruptcy Court from June 18 to July 30, 1996, and then by the Debtor from August 6 to October 22, 1996. Because the Debtor's personal absence from the October 22 hearing precluded the court from considering the Fund's objection that the Debtor's Modified Plan was not filed in good faith, the court adjourned the hearing until December 10, 1996 to allow the Fund to depose the Debtor and present evidence of the Debtor's bad faith.

The Debtor was deposed on November 19, 1996 and his wife, Joanne Goddard, was deposed as a fact witness on December 5, 1996. At the subsequent hearing of the matter on December 10, 1996, the Bankruptcy Court confirmed the Debtor's Modified Plan and determined that his Petition had been filed in good faith. It is from this Order which the Fund now appeals.

## II. DISCUSSION

### A. STANDARD OF REVIEW

Bankruptcy Rule 8013 provides in pertinent part: "On an appeal the district court … may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact will be upheld unless clearly erroneous." 11 U.S.C.A. Rule 8013 (West Supp.1995); *Resyn Corp. v. United States,* 851 F.2d 660, 664 (3d Cir.1988). In defining the term "clearly erroneous" the United States Supreme Court has stated that "[a] finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conclusion that a mistake has been committed." *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). A bankruptcy court's conclusions of law are subject to plenary review. *Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81, 84 (3d Cir.1988). Where mixed questions of

law and fact are presented, the appropriate standard must be applied to each component. *In re Sharon Steel Corp.,* 871 F.2d 1217, 1222 (3d Cir.1989).

In the present matter, the Appellant argues that the issue on appeal is whether the Bankruptcy Court erred in finding that the Debtor's Chapter 13 Petition and Modified Plan were filed in good faith "when the evidence demonstrated that the said petition misrepresented the financial condition of the debtor and his ability to fund an appropriate plan and had been filed in an attempt to evade payment to the Appellant." Appellant's Brief at 2. Whether a Chapter 13 petition or plan has been proposed in good faith is a question of fact subject to the clearly erroneous standard of review. *In re Love,* 957 F.2d 1350, 1354 (7th Cir.1992). However, the Bankruptcy Court's conclusions with regard to the legal standard applicable to good faith determinations are questions of law reviewed under the *de novo* standard. *Id.*

### B. GOOD FAITH UNDER SECTION 1307(C)

Chapter 13 does not explicitly contain a good faith requirement for the filing of a petition. *In re Lilley,* 91 F.3d 491, 496 (3d Cir.1996); *In re Love,* 957 F.2d 1350, 1354 (7th Cir.1992). Nevertheless, Section 1307(c) of the Bankruptcy Code does state that Chapter 13 petitions may be dismissed "for cause." *In re Lilley,* 91 F.3d at 496. The Third Circuit has indicated that lack of good faith in filing the petition is sufficient cause for dismissal under Chapter 13.[1] *Id.* (citing *In re Love,* 957 F.2d at 1354; *In re Eisen,* 14 F.3d 469, 470 (9th Cir.1994); *In re Gier,* 986 F.2d 1326, 1329–30 (10th Cir.1993)).

"[G]ood faith is a term incapable of precise definition." *Id.* (quoting *In re Love,* 957 F.2d at 1355). It is neither defined in the Bankruptcy Code nor in its legislative history. *Matter of Smith,* 848 F.2d 813, 817 (7th Cir.1988). Good faith is fact intensive and requires a case-by-case analysis. *In re Lilley,* 91 F.3d at 496 (quoting *In re Love,* 957

---

**1.** Because Section 1307(c) does not specifically require that a debtor file a petition in good faith, it follows that "[d]ismissal for cause cannot mean that a debtor must show an absence of

cause; it can only mean that the party moving for dismissal must demonstrate cause." *In re Love,* 957 F.2d at 1355 (citing *In re Klein,* 100 B.R. 1004, 1008 (N.D.Ill.1989)).

F.2d at 1355). The court must ultimately make a common sense judicial determination based upon the "totality of the circumstances" of the particular case involved. *Id.* (citing *In re Love,* 957 F.2d at 1355; *In re Gier,* 986 F.2d at 1329; *In re Eisen,* 14 F.3d at 470).

 The "totality of the circumstances" test involves a nonexclusive list of factors, none of which is by itself controlling. *Id.* These factors, as applied to the Chapter 13 petition, are set forth in *In re Lilley* as follows:

 (1) The nature of the debt; [2]

 (2) The timing of the petition;

 (3) How the debt arose;

 (4) The debtor's motive in filing the petition;

 (5) How the debtor's actions affected creditors;

 (6) The debtor's treatment of creditors both before and after the petition was filed; and

 (7) Whether the debtor has been forthcoming with the bankruptcy court and the creditors.

*In re Lilley,* 91 F.3d at 496; *see also In re Love,* 957 F.2d at 1357. A finding that a petition was not filed in good faith can lead to the dismissal and termination of the bankruptcy proceedings, or it can lead to an order to convert the case to a proceeding under Chapter 7 of the Bankruptcy Code [3] *See In*

*re Love,* 957 F.2d at 1354 (citing 11 U.S.C. § 1307(c)).

 A review of the record below clearly indicates that the Fund moved to dismiss the Debtor's Chapter 13 Petition because said Petition was not filed in good faith. Indeed, the Bankruptcy Court's December 10th Order specifically denied this motion. *See* December 10th Order. Despite this determination, however, the record contains no findings regarding whether the Chapter 13 Petition was filed in good faith.[4] In particular, there are no findings regarding the nature of the debt, the timing of the petition, how the debt arose, the debtor's motive in filing the petition, how the debtor's actions affected creditors, the debtor's treatment of creditors both before and after the petition was filed, and whether the debtor has been forthcoming with the bankruptcy court and the creditors. *See In re Lilley,* 91 F.3d at 496. On the contrary, the Bankruptcy Court observed as follows:

 This Court is not sitting as a criminal court. The egregiousness of the debtor's conduct is totally—conduct outside of the Bankruptcy, is totally irrelevant to the result in a Bankruptcy case. If Mr. Goddard's good faith, his good faith in the Bankruptcy Court, the fact that he did something that merited imprisonment, does not mean that his burden is any greater in the Bankruptcy Court.

 A murderer, a convicted murderer can be discharged by this Court. Without fur-

**2.** While the Third Circuit joined the Seventh, Ninth and Tenth Circuits in holding that a court must consider the "totality of the circumstances" when determining whether a Chapter 13 petition was filed in good faith, *In re Lilley,* 91 F.3d at 496 (citing *In re Love,* 957 F.2d at 1355; *In re Gier,* 986 F.2d at 1329; *In re Eisen,* 14 F.3d at 470), the court expressly rejected one of the good faith factors identified by the Seventh Circuit in *In re Love:* the question of whether the debt would be non-dischargeable in a Chapter 7 proceeding. *Id.* at 496 n. 2.

**3.** Of course, the Fund's claim would be nondischargeable should this matter be converted to Chapter 7. *See* 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6). Moreover, the Bankruptcy Court's suggestion to the contrary notwithstanding, *see* Hearing Tr. at 39, the Third Circuit's decision in *In re Conte,* 33 F.3d 303 (3d Cir.1994) would not change this analysis. *Conte* held that a prepeti-

tion jury finding that the debtor acted with knowledge of high probability of harm to his clients did not have collateral estoppel effect in a Chapter 7 dischargeability proceeding because a higher degree of culpability was required (*i.e.,* that the debtor purposefully inflicted injury or acted with substantial certainty that injury would result). The Debtor's actions in this case, however, clearly meet this higher standard. Therefore, *Conte* provides him with no refuge.

**4.** Apparently, the Bankruptcy Court assumed that its analysis under 11 U.S.C. § 1325(a) was somehow dispositive of the good faith analysis under 11 U.S.C. § 1307(c). While there "will often be substantial overlap" in a good faith analysis of a Chapter 13 petition and a good faith analysis of a Chapter 13 plan, *In re Love,* 957 F.2d at 1360, the analysis is not identical. *Id.* (citing *Matter of Madison Hotel Assocs.,* 749 F.2d 410, 425 (7th Cir.1984)).

ther comment, the newspapers, if you scour them carefully, will show you that one of the most high profile cases before me in this Court, in fact, involves a convicted murderer who is in State's prison and who is seeking a Chapter 11 plan, and that will be confirmed or not confirmed based, not upon his murder, but upon what he does in the Bankruptcy Court.

The issue of good faith is a Bankruptcy issue, not having—nothing whatsoever to do with his conduct prior to filing the petition with respect to his professional license, his criminal activity or whatever. I make no judgment. I make no finding and I don't care.

*See* Transcript of December 10, 1996 Hearing ("Hearing Tr.") at 38. By failing to consider the *Lilley* factors, the Bankruptcy Court erred as a matter of law. Thus, we will vacate the December 10th Order to the extent it denied the Fund's motion to dismiss the Chapter 13 Petition and remand this matter to the Bankruptcy Court for a determination whether, in light of the totality of the circumstances, Mr. Goddard filed his Chapter 13 Petition in good faith.

 In making this determination on remand, the Bankruptcy Court must consider, *inter alia*, the following evidence that was set forth on the record. First, the vast majority (87.43 %) of the Debtor's unsecured debt arose from his dishonest conduct as an attorney. Second, the Debtor concedes that the "immediate reason" he filed his Chapter 13 Petition was "this problem with the Client Security Fund" in which he said "someone had come to my house trying to serve me with a petition of some kind. I think it was

for my arrest within 10 days of the actual service." [5] Hearing Tr. at 19–20. Third, as noted below, the Debtor's disposable income available for his Modified Plan would have been substantially higher had he accurately reported his debts and expenses. Indeed, the record reveals that while the Debtor placed the home and property in his wife's name so that his first wife and children would not "bother the tar out of [him]," *see* Goddard Dep. at 24, the Debtor listed the entire mortgage ($1000 per month) as his debt. As a result of this inaccuracy, the Debtor claimed responsibility for a larger portion of his family's living expenses, and asserted that his wife's income was used for the family's discretionary consumer spending. All the creditors, with the exception of the IRS, would receive nothing under the Debtor's plan.[6]

## C. Good Faith Under Section 1325(a)

 Should the Bankruptcy Court find that the Debtor's Petition was actually filed in good faith, then it must turn its attention to consideration of whether the Debtor filed his Modified Plan in good faith. Section 1325(a)(3) requires that a Chapter 13 plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). "Because the Code does not contain a definition of 'good faith,' courts have long struggled with the appropriate parameters for the requisite inquiry into debtor's motive and intentions in proposing a chapter 13 plan." [7] *In re March*, 83 B.R. 270, 273 (Bankr.E.D.Pa.1988).

Prior to passage of the Bankruptcy Amendments and Federal Judgeship Act of

---

**5.** As the Ninth Circuit noted in *In re Eisen*, 14 F.3d at 470, "[b]ad faith exists where the debtor only intended to defeat state court litigation." *See also In re Chinichian*, 784 F.2d 1440, 1445–46 (9th Cir.1986) (same).

**6.** Although the Appellant has not raised on appeal the accuracy of the Debtor's reported income and expenses for Section 1325(b) purposes, it is clear that the accuracy of such information is required for a "good faith" analysis under either 11 U.S.C. § 1307(c), *In re Lilley*, 91 F.3d at 496, or 11 U.S.C. § 1325(a). *See Education Assistance Corp. v. Zellner*, 827 F.2d 1222, 1227 (8th Cir.1987); *In re Cardillo*, 170 B.R. 490, 492 (Bankr.D.N.H.1994).

**7.** A bankruptcy court's rejection of a plan for lack of good faith does not necessarily lead to dismissal or conversion. *See In re Love*, 957 F.2d at 1354. Moreover, a creditor who files objections to the confirmation of a debtor's plan of reorganization must bear the initial burden of producing evidence that the debtor's plan of reorganization does not contemplate the application of all of his or her disposable income to the plan over the life of the plan. However, after the creditor satisfies this initial burden, the ultimate burden of proof shifts to the debtor. *In re Rothman*, 206 B.R. 99, 104 (Bankr.E.D.Pa.1997).

1984 ("BAFJA"), most courts of appeals which had examined the issue held that an inquiry into good faith required an examination of numerous factors ("*Estus* factors") including:

(1) the amount of the proposed payment and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increase in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief;

(11) the burden which the plan's administration would place upon the trustee; and

(12) whether the debtor is attempting to abuse the spirit of the Bankruptcy Code.

*In re Estus,* 695 F.2d 311, 316 (8th Cir.1982); *see also Flygare v. Boulden,* 709 F.2d 1344, 1347–48 (10th Cir.1983); *In re Kitchens,* 702 F.2d 885, 888–89 (11th Cir.1983); *In re Rimgale,* 669 F.2d 426, 432–33 (7th Cir.1982); *In re Goeb,* 675 F.2d 1386 (9th Cir.1982); *In re Norwood,* 178 B.R. 683, 687 n. 6 (Bankr. E.D.Pa.1995).

After passage of BAFJA, however, many of the *Estus* factors were subsumed by Section 1325(b)'s "ability to pay" criteria.[8] *See In re LeMaire,* 898 F.2d 1346, 1349 (8th Cir.1990) (en banc) (citing *Zellner,* 827 F.2d at 1227). As a result, the inquiry into whether a Chapter 13 plan was proposed in good faith has taken on a more narrow focus, *Zellner,* 827 F.2d at 1227, and now principally concentrates on the following factors: (1) whether the debtor has stated his debts and expenses accurately; (2) whether he has made any fraudulent misrepresentations to mislead the bankruptcy court; or (3) whether he has unfairly manipulated the Bankruptcy Code. *Id.* The inquiry, however, still has at its heart the determination of whether under the circumstances of the entire case there has been an abuse of the " 'provisions, purpose, or spirit of [Chapter 13]' " in the proposed plan. *Matter of Smith,* 848 F.2d at 818 (quoting *In re Rimgale,* 669 F.2d at 431; *In re Thomas,* 118 B.R. 421, 423 (Bankr. D.S.C.1990)). Moreover, most courts have concluded that, even after BAFJA, a bankruptcy court must look at *Estus* factors not addressed by the amendments—including the debt sought to be discharged, and the debtor's motivation and sincerity in seeking Chapter 13 relief—to determine whether a debtor proposed his Chapter 13 plan in good faith.[9] *See, e.g., In re LeMaire,* 898 F.2d at 1349; *Matter of Smith,* 848 F.2d at 822. *See also In re Tucker,* 989 F.2d 328, 330 (9th Cir.1993) ("The bankruptcy court must consider the totality of the circumstances, including prepetition conduct, in deciding whether the debtor has 'acted equitably.' ") (quoting *In re Goeb,* 675 F.2d at 1390); *In re LeMaire,* 898 F.2d at 1352 ("While pre-filing conduct is not determinative of the good faith issue, it is nevertheless relevant.") (citing *In re Doersam,* 849 F.2d 237, 239 (6th Cir.1988); *Matter of Smith,* 848 F.2d at 818; *Neufeld v. Freeman,* 794 F.2d 149, 152 (4th Cir.1986)).

**8.** Section 1325(b) states that if an unsecured creditor objects to confirmation, the bankruptcy court may not approve the plan unless that creditor is to receive full payment, § 1325(b)(1)(A), or, alternatively, the debtor meets the "ability to pay" test; that is, he commits all of his projected income to the plan for at least three years, § 1325(b)(1)(B).

**9.** Because the Third Circuit noted that a court must not consider whether a debt would be nondischargeable in a Chapter 7 proceeding for Section 1307(c) purposes, *In re Lilley,* 91 F.3d at 496 n. 2, we conclude that this factor should also not be considered for Section 1325(a) purposes.

■ Applying the foregoing analysis to the case at bar, it is clear that the Bankruptcy Court's December 10th Order must be vacated and remanded. As noted above, the lower court expressly declined to consider the Debtor's pre-filing conduct. This hardly satisfies a "totality of the circumstances" test. While we do not suggest that, for purposes of Section 1325(a), pre-filing conduct is determinative of the good faith issue, it is nevertheless relevant and should have been considered.[10] *See In re LeMaire,* 898 F.2d at 1352 (citing *In re Doersam,* 849 F.2d at 239; *Matter of Smith,* 848 F.2d at 818; *Neufeld,* 794 F.2d at 152). Thus, we will vacate the Bankruptcy Court's December 10th Order to the extent that it overruled the Fund's objection to confirmation of the Debtor's Modified Plan and remand for a determination whether, in light of the totality of the circumstances, Mr. Goddard filed his Chapter 13 Plan in good faith.

■ We also conclude that the Bankruptcy Court was clearly erroneous by finding that the Debtor accurately stated his debts and expenses. The undisputed testimony reflects—and the Bankruptcy Court expressly found—that the Debtor and his wife deposited their respective incomes into Mrs. Goddard's bank account and that Mrs. Goddard paid all of the family's expenses (living expenses and discretionary expenses) from this account. Yet, when the Debtor set forth his debts and expenses in his Modified Plan, he claimed responsibility for the entire mortgage, even though he admitted that the house was placed in Mrs. Goddard's name to avoid potential claims from his first wife and his children:

Question: Why was you[r] wife the only person on the deed if it was a joint venture, as you term it?

Answer: Probably the most important reason from our point of view at the time was that my first wife was bothering the tar out of us, and rather than risk putting it in my name, we put it in her name. There were constant motions for child support and other things.

Goddard Dep. at 24. In other words, the Debtor—whether intentionally or not—artificially raised his debts and expenses by claiming responsibility for a substantially higher portion of his family's living expenses than is warranted, thereby lowering his Modified Plan payments and enabling his wife's income to be used for the family's discretionary consumer spending.[11] Clearly, the Debtor cannot claim responsibility for the entire mortgage since, at most, it is joint property. *See In re Cardillo,* 170 B.R. at 492 ("Section 1325(a) of the Bankruptcy Code requires that, in order to confirm a plan, it must be proposed in good faith. Based on the debtor's failure to apply all of her disposable income to this Plan and failure to properly schedule her spouse's income and expenses, the Court finds that this Plan has not been proposed in good faith and its confirmation must be denied."); *cf. In re Velis,* 123 B.R. 497, 511 (D.N.J.1991) (noting that a non-debtor spouse's income and expenses are to be taken into consideration when determining whether all of the debtor's disposable income has been applied toward the plan) (citing *Matter of Belt,* 106 B.R. at 563); *In re Rose,* 101 B.R. 934, 943 (Bankr.S.D.Ohio 1989); *Matter of Saunders,* 60 B.R. 187, 188 (Bankr.N.D.Ohio 1986), *rev'd in part on*

---

**10.** As the court noted in *In re Ristic,*
 The court fully recognizes, as stated in *In re Belt,* 106 B.R. 553, 569 (Bankr.N.D.Ind.1989), that even the most egregious pre-petition misconduct does not necessarily preclude good faith. Such pre-filing conduct must be accompanied by other factors which suggest that the plan, nevertheless, represents a good faith effort by the debtor to satisfy his creditors' claims. *In re LeMaire,* 898 F.2d 1346, 1352 (8th Cir.1990) (quoting from *Neufeld v. Freeman,* 794 F.2d 149, 153 (4th Cir.1986)). On the other hand, even the most herculean efforts by a debtor to persuade a court that his petition and plan are in good faith may fail where

the overall picture demonstrates a lack of such good faith. *Matter of Jones,* 119 B.R. 996, 1003 (Bankr.N.D.Ind.1990).
142 B.R. 856, 859–60 (Bankr.E.D.Wis.1992)

**11.** The Debtor maintained in his Certification in response to the Appellant's objection to his Modified Plan that it was necessary for him to apply $12,000 of his annual income of $25,800 to pay the entire mortgage on their home because his wife's income of $36,000 was consumed by the minimum payments on fourteen (14) credit cards totaling $1,642 per month and the monthly lease payments of $345 on an Acura Vigor.

*other grounds,* 949 F.2d 78 (3d Cir.1991); *In re Carter,* 205 B.R. 733, 735–36 (Bankr. E.D.Pa.1996) (footnote and citations omitted) (same). Therefore, the Debtor's statement regarding his debts and expenses is inaccurate and the Bankruptcy Court's finding to the contrary was clearly erroneous.

On remand, the Bankruptcy Court should consider whether this inaccuracy was made for the purpose of misleading the Bankruptcy Court and/or manipulating the Bankruptcy Code. *Zellner,* 827 F.2d at 1227. Once this is accomplished, the Bankruptcy Court should then reconsider whether, in light of the totality of the circumstances, the Debtor met his burden of demonstrating that his Modified Plan was filed in good faith under Section 1325(a).

## III. CONCLUSION

For the foregoing reasons, the Court will: (1) reverse the Bankruptcy Court's finding that the Debtor accurately reported his debts and expenses in his Chapter 13 Modified Plan; and (2) vacate the December 10th Order and remand for further proceedings consistent with this Opinion.