In re Emanuel DRAGONE, Debtor.

In re George Dragone, Debtor.

In re Dragone Classic Motor Cars, Inc.

Nos. 00–51313 to 00–51315.

United States Bankruptcy Court,
D. Connecticut.

Dec. 9, 2004.

Irve Goldman, Pullman & Comley, Bridgeport, CT, for Dragone Classic Motor Cars.

Ellery Plotkin, Stamford, CT, for George and Emanuel Dragone.

Maximino Medina, Jr., Zeldes, Needle & Cooper, Bridgeport, CT, for Hudson United Bank.

William Fish, Tyler, Cooper & Alcorn, Hartford, CT, for the Official Committee of Unsecured Creditors.

## DECISION AND ORDER ON MOTION TO ENFORCE SETTLEMENT

ALAN H.W. SHIFF, Bankruptcy Judge.

The Official Committee for Unsecured Creditors and Hudson United Bank have moved in each of these cases to enforce an agreement ("Motion"). For the reasons that follow, the Motion is granted.

### Background

In each case, the respective Committee of Unsecured Creditors (collectively, the "Committee") and unsecured creditor Myron J. Schuster have objected to the debtors' chapter 11 plans, and the Committee has filed competing chapter 11 plans. On June 4, 2004, a hearing was scheduled on a motion to sell certain vehicles held by a nondebtor, Dragone Vintage Cars Company, but alleged to be fraudulently transferred property of the bankruptcy estates. *See* adversary proceedings 03–5053 & 03–5054. Rather than prosecute that action, counsel for the debtors, the Committee, Schuster, and Hudson United Bank announced in open court that they had reached an agreement ("Settlement").

Specifically, attorney Maximino Medina, Jr., counsel for Hudson United Bank, reported that the parties "believe we have reached an agreement in principle that will allow these three cases to go forward on a consensual basis." Tr. of 6/4/04 at 4. While he acknowledged that the agreement would "require the drafting of substantial documents" and that all of the

parties "reserve for the record their right to review and approve those closing documents and ancillary documentation," attorney Medina clearly stated that "the parties would like to have the record today reflect *that they've agreed on the following.*" *Id.* (emphasis added). Over the period of approximately half an hour, attorney Medina then recited the details of the agreement: (a) Tom Dragone would no longer sell his 50% of the "Main Street property," as had been previously provided; (b) the creditors would receive a mortgage on the "Barnum Ave property," as specified in the prior plans, and would also get a mortgage on the 50% of the "Main Street property" owned by Emanuel and George Dragone, but that mortgage would be released upon 18 consecutive timely monthly payments; (c) the interest rate paid to creditors would be the prime rate as reported in the Wall Street Journal plus 1.3%; (d) the Committee would be granted a junior lien on the automobiles in Dragone Vintage's inventory, which will be junior in every way to Hudson United Bank's lien; (e) Dragone Vintage would not need to seek the Committee's permission to sell the automobiles despite that lien; (f) the Committee would subordinate the lien for new inventory, whether financed through additional loan money from Hudson United Bank or through financing with a different lender; (g) that as to Hudson United Bank, the Committee's lien would be assigned a zero paper value for underwriting purposes as to not restrict the debtors or Dragone Vintage's lending borrowing ability, provided that banking regulations permit this; (h) that all of the respective rights and obligations of the agreement would be binding on the parties, their successors and assigns; (i) the debtors would have a 30 day period to cure any postpetition default, after which time the creditors would have the right to file a motion seek-

ing relief for the default, including conversion of the case; and (j) the debtors would retain all rights to object on any ground to any such motion by a creditor. *See* Tr. of 6/4/04 at 4–16.

A few minor points were left open. While it was agreed that the interest rate formula would be based on the prime interest rate as reported in the *Wall Street Journal,* the parties were to specify whether that was the open or close of business on June 4th. *See* Tr. of 6/4/04 at 6. In addition, the particular structure for the Committee to oversee the cases postconfirmation was not finalized, but was determined to be whatever was most "cost effective." Tr. of 6/4/04 at 15. It was also noted that the parties believed that the loan of Hudson United Bank in question only was collateralized by the vehicles of Dragone Vintage, but that attorney Medina could not confirm that fact until the following Monday. *See* Tr. of 6/4/04 at 16.

Attorney Medina concluded by reiterating that "[o]ur respective clients have given us authority to report to the court that this agreement that we're describing today is acceptable to all of them." Tr. of 6/4/04 at 16. No party in attendance challenged that statement, and in reliance therewith, the court directed the debtors to draft an amended disclosure statement to advise creditors of the changes.

Shortly after the hearing, attorney Goldman, counsel for debtor Dragone Classic Motor Cars, Inc., telephoned the other parties to inform them that the debtors would not proceed with the Settlement. On June 15, 2004, he stated in court that "[w]e're in the unhappy position of having to report to the court that the debtors aren't—don't feel they are able to follow through *with the settlement that we placed on the record* last Friday, June 4th.... We learned a couple of things after the hearing *that led us to change our views on the settlement.*" Tr. of 6/15/04 at 2–3 (emphasis added). That same day, the Motion was filed.

### Discussion

■ Parties who assent to an oral settlement made in open court are bound to that agreement. *See Monaghan v. SZS 33 Assocs., L.P.,* 73 F.3d 1276, 1283 (2d Cir. 1996); *see also Brown v. Nationscredit Commercial,* No. 3:99–CV–592, 2000 WL 888507, at *2 (D.Conn. June 23, 2000) ("The only essential prerequisite for a valid settlement agreement is that the [parties] mutually assent to the terms and conditions of the settlement."); *MacDonald v. Dragone Classic Motor Cars,* No. 3:95–CV–499, 2003 WL 22056626, at *6 (D.Conn. April 29, 2003) ("[O]nce reached, a settlement agreement constitutes a contract that is binding and conclusive and the parties are bound to the terms of the contract even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time it is reduced to writing."). The fact that ancillary documents need to be drafted does not prevent an oral agreement from being enforced. *See V'Soske v. Barwick,* 404 F.2d 495, 499 (2d Cir.1968). The Second Circuit has noted:

> This freedom to contract orally remains even if the parties contemplate a writing to evidence their agreement. In such a case, the mere intention to commit the agreement to writing will not prevent contract formation prior to execution. On the other hand, if either party communicates an intent not to be bound until he achieves a fully executed document, no amount of negotiation or oral agreement to specific terms will result in the formation of a binding contract.

*Winston v. Mediafare Entertainment Corp.,* 777 F.2d 78, 80 (2d Cir.1985).

■ The debtors contend that the Settlement, as read on the record on June 4th, was not an enforceable agreement and would not be so until it was reduced to an executed written agreement. The Second Circuit has looked to four factors to determine whether parties are bound to an oral agreement that contemplates a later written agreement:

(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Adjustrite Sys., Inc. v. GAB Business Servs., Inc.,* 145 F.3d 543, 549 (2d Cir. 1998) (citation omitted); *see also Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 574–76 (2d Cir.1993) (utilizing a similar test with sixteen factors).

As to the first factor, the debtors did not reserve a right not to be bound absent the written documents. Notably, they did not object to opposing counsel's representation that the parties gave "authority to report to the court that this agreement that we're describing today is acceptable to all of them." Tr. of 6/4/04 at 16. The only reservation of a right was the right to review the final written documents, which merely preserved their right to ensure that the written documents matched the Settlement described in court.

Second, in contemplation of the Settlement, the parties did not proceed with the scheduled hearing on the motion to sell. That is a form of partial performance. Any further performance was not prevented by any deficiency in the Settlement, but rather by the debtors' change of position after the hearing.

Third, the debtors argued that all material terms needed for the Settlement were not agreed upon. They claimed that the Settlement failed to provide what would occur if the lien given to the Committee was not given a zero value by banks. But that is not the case. The Settlement expressly provided that the lien would have a zero value only to the extent that banking regulations permitted it. Moreover, contracts often do not provide for all contingencies since every possibility cannot be contemplated at the time of contract formation.

Finally, while it is apparent that the parties contemplated a writing to formalize their agreement, as noted *supra* at 35, that fact alone will not negate an otherwise enforceable agreement. Further, the Settlement was not merely an oral agreement. Indeed, the parties took the precaution of reading its terms into the record in open court, so that a written transcript would be available to verify what was agreed upon.

■ It is therefore apparent that the Settlement was more than a mere agreement to agree. The question then is whether it is was a fully enforceable agreement or a "binding preliminary commitment," which is enforceable only in part:

[A] "binding preliminary commitment" ... is binding only to a certain degree. It is created when the parties agree on certain major terms, but leave other terms open for further negotiation. The parties "accept a mutual commitment to negotiate together in good faith in an effort to reach final agreement." ... [A] "binding preliminary commitment" "does not commit the parties to their ultimate contractual objective but rather to the obligation to negotiate the open issues in good faith in an attempt to reach the ... objective within the agreed framework."

*Adjustrite,* 145 F.3d at 548 (citations omitted).

Based on a review of the factors noted *supra* at 36, it is concluded that the Settlement was a fully enforceable agreement. The only details left unresolved were minor and not necessary for a complete agreement, and the drafting of documents was contemplated merely to evidence the agreement already reached. To conclude otherwise would not give effect to the intention of the parties that was clearly expressed on the record on June 4th.

Accordingly, it is HEREBY ORDERED that the Motion is GRANTED.