In re Emanuel DRAGONE, Debtor.

In re George Dragone, Debtor.

In re Dragone Classic Motor Cars, Inc., Debtor.

Nos. 00–51313, 00–51314, 00–51315.

United States Bankruptcy Court, D. Connecticut.

April 25, 2005.

**446**

Irve Goldman, Esq., Pullman & Comley, Bridgeport, CT, for Debtor Dragone Classic Motor Cars.

Ellery Plotkin, Esq., Stamford, CT, for Debtors George and Emanuel Dragone.

William Fish, Esq., Tyler, Cooper & Alcorn, Hartford, CT, for Official Committees Of Unsecured Creditors.

Barbara Katz, Esq., New Haven, CT, Former counsel to Official Committees Of Unsecured Creditors and fee applicant.

Maximino Medina, Jr., Esq., Zeldes, Needle & Cooper, Bridgeport, CT, for Creditor Hudson United Bank.

Matthew Beatman, Esq., Zeisler & Zeisler PC, Bridgeport, CT, for Creditor Myron Schuster.

Mark I. Fishman, Esq., Pepe & Hazard, Southport, CT, for Creditor Pepe & Hazard.

Steven Mackey, Esq., Office of the U.S. Trustee, New Haven, CT, for the United States Trustee.

## MEMORANDUM AND ORDER ON APPLICATIONS BY ATTORNEY FOR CREDITORS' COMMITTEES FOR FINAL ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

ALAN H.W. SHIFF, Bankruptcy Judge.

On October 5, 2000, these three cases were commenced in the New Haven division by involuntary chapter 7 petitions. On October 26, 2000, the debtors converted them to chapter 11, and thereafter venue was transferred to this court. On or about February 26, 2001, the United States Trustee appointed a Committee of Unsecured Creditors for each case. *See* 11 U.S.C. § 1102. Attorney Barbara H. Katz's employment by the Committees was approved by orders dated April 18, 2001, *nunc pro tunc* to March 2, 2001. *See* 11 U.S.C. § 1103(a). Attorney Katz served as counsel for the Committees until July 7, 2004, when she withdrew her appearance. The court has approved attorney Katz's interim application in each case for fees up to and including August 31, 2000. *See* 11 U.S.C. § 331. Her instant final applications ("Applications") are for the allowance of compensation and reimbursement of expenses incurred from that date through July 7, 2004, in the amounts of $27,132.00 and $4,488,45, respectively, in the two individual debtors' cases, and $89,981.25 and $6,432.80, respectively, in the corporate debtor's case. In addition, attorney Katz seeks final authorization for the payment of the amounts previously awarded on an

interim basis. The Committees, secured creditor Hudson United Bank, unsecured creditors Myron Schuster and Pepe & Hazard, and the United States Trustee support the Applications. The debtors have objected, claiming that the Applications must be denied in their entirety.

## Discussion

The statutory basis for approval of the Applications is provided by 11 U.S.C. § 330:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, ... the court may award to ... a professional person employed under section ... 1103 -

(A) reasonable compensation for actual, necessary services rendered by the ... attorney ...; and

(B) reimbursement for actual, necessary expenses.

The statute requires the analysis of two separate factors: reasonableness and the necessity of the services provided. The debtors do not challenge the reasonableness of the requested fee. It is noted that the hourly rate charged by attorney Katz, $225 through 2003 and $300 thereafter, is considerably less than the $345 hourly rate which the attorney for the corporate debtor sought and was awarded in his most recent interim fee application. *See* docket # 663 at Ex. A in case 00–51315. The debtors' objection relates to the necessity of the services itemized in the Applications, arguing that:

the services performed by counsel for the Creditors' Committee in opposing the Debtors' plans and advancing a plan of their own were not reasonably likely to benefit the estate and also were not necessary to the administration of the estate. Indeed, such services were harmful to the estate in that they were in furtherance of an unyielding liqui-

dation agenda on the part of the Creditors' Committee that unduly prolonged the administration of the case and resulted in substantial and unnecessary administrative claims against the estate. Obj. at ¶ 17 in case 00–51315 and Obj. at ¶ B–3 in case 00–51313.

 The debtors' argument that the Applications should be denied in their entirety because the services rendered did not "benefit the estate" is unavailing. Section 330(4)(A), which clarifies the necessary services prong of § 330(1)(A), provides, in relevant part, that "the court should not allow compensation for ... services that were not—(I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case." Therefore, even if the services itemized in the Applications did not benefit the estate, they still could be allowed if they were "necessary to the administration of the case."

 The bankruptcy code mandates that "as soon as practicable ..., the United States Trustee shall appoint a committee of creditors holding unsecured claims." 11 U.S.C. § 1102(a)(1). The code further provides that the committee may retain, among others, attorneys to "represent or perform services for such committee," 11 U.S.C. § 1103(a), who may granted an award for their services and fees, *see* 11 U.S.C. § 330(a). Those provisions buttress the conclusion that the protection of unsecured creditors' interests by competent and experienced attorneys is necessary for the administration of chapter 11 cases.

The debtors argue that rather than negotiate with them, the Committees' chose to oppose the debtors' plans and file their own competing plans. As a consequence, they contend that rather than benefit their estates, the Committees' actions actually harmed them by provoking unnecessary, acrimonious, and costly litigation.[1]

---

1. The debtors concede that "a creditors' com-

mittee unquestionably has the power to pro-

Contrary to the debtors' argument, the records of these cases demonstrate that much of the delay in their administration may fairly be attributed to them. For example, the corporate debtor filed multiple plans of reorganization.[2] After October 1, 29, 30, and 31, 2003 hearings on the Committee's objections to its plan, the corporate debtor moved on April 20, 2004 to modify that plan, which required another hearing on May 13, 2004. Similarly, the individual debtors filed numerous plans.[3]

Although the debtors argue that amendments to their plans were not a reaction to the Committees' opposition and competing liquidating plans, see Tr. of 2/22/05 at 14, the record of these cases suggests otherwise. For example, each iteration improved the treatment to holders of unsecured claims.[4] The first plan filed by the corporate debtor in June 2001 would have paid unsecured creditors over 15 years with interest at the 52–week T–Bill and with no security for the payments. Moreover, the source of those payments was vague. The settlement between the debtors and the Committees[5] provided for significantly better treatment of the claims of unsecured creditors. If confirmed, an amended plan consistent with the settlement will provide for distributions to unsecured creditors over 5 years at the prime rate of interest plus 1.3 percent, and that obligation will be secured by mortgages on property and junior liens on vehicles.

■ An award for compensation under § 330 is not premised on the benefit of hindsight, see In re Angelika Films 57th, Inc., 227 B.R. 29, 42 (Bankr.S.D.N.Y.1998), but even with that perspective, the Applications would still be allowed. Bankruptcy policy conditions a fresh financial start for honest debtors on a fair distribution to the holders of allowed claims, and it is doubtful that that balance would have been achieved in these cases without the services provided and expenses incurred by attorney Katz. It is therefore apparent that those services and expenses were necessary to the administration of these cases.

Significantly, not a single unsecured creditor, whose claims have a lower distribution priority than attorney Katz's ad-

---

pose its own plan." Obj. at ¶ 20 in case 00–51315 and Obj. at ¶ B–6 in case 00–51313.

**2.** The corporate debtor filed its initial plan of reorganization on June 29, 2001, and filed amended plans on July 24, 2001, August 31, 2001, October 2, 2002, April 23, 2003, and August 6, 2003 The Committee filed a competing plan on August 19, 2002 and amended plans on November 5, 2002 and November 7, 2003.

**3.** The individual debtors filed their initial plans of reorganization on June 28, 2001, and filed amended plans on Jul 24, 2001, April 2, 2003, and April 25, 2003. The Committees filed competing plans on March 11, 2003 and amended plans on November 10, 2003.

**4.** Arguably the failure of the debtors to propose in their initial plans provisions that would treat unsecured creditors as favorably as their last plans would support the conclusion that those plans offended the good faith mandate of 11 U.S.C. § 1129(a)(3). Cf. In re

Koelbl, 751 F.2d 137, 139 (2d Cir.1984) (holding a plan should be proposed with "honesty and good intentions and with a basis for expecting that a reorganization can be effected." (citations omitted)); In re Madison Hotel Assocs., 749 F.2d 410, 425 (7th Cir.1984) ("[U]nder section 1129(a)(3) ... the important point of inquiry is ... whether [the] plan will fairly achieve a result consistent with objectives and purposes of the Bankruptcy Code.").

**5.** On June 4, 2004, the debtors and the Committees stated in open court that they reached a settlement of all issues in all three cases. On June 15, 2004, the debtors returned to court on and stated that they had never reached an enforceable agreement. On December 9, 2004, the court granted the Committees' motion for an order that the parties had entered into an enforceable settlement. See 318 B.R. 33, appeal pending.

ministrative claims, *see* 11 U.S.C. § 507, objected to the Applications. To the contrary, several supported them. The largest unsecured creditor, Myron Schuster, who's "ox is really being gored by [Katz's] fees," Tr. of 2/22/05 at 20, argued that "Ms. Katz had done an exemplary job in terms of trying to steward what's been a very difficult and contentious case." *Id.* He argued that the debtors, rather than attorney Katz, had been the obstructionists, and their actions caused the accrual of substantial fees. Two other creditors, Hudson United Bank and the law firm of Pepe & Hazard, concurred. Further, the United States Trustee, who has no financial interest in these cases and is require to review fee applications, *see* 28 U.S.C. § 586(a)(3)(A), also supported the Applications.

For the foregoing reasons, the debtors' objections are overruled, the Applications are approved, and

IT IS SO ORDERED.